The CITY OF AUSTIN POLICE DEPARTMENT, Appellant,

v.

Arthur BROWN; Ron Blackmore; Edwin Booth; Janis Dickerson; Karen Duncan; Gary Duty; Robert Allen Hasselman; David Koschel; George Moxley; Paul Okruhlik; Michael Rech; Jeff Rodman; and John Walenta, Appellees.

No. 03–99–00878–CV.

Court of Appeals of Texas, Austin.

Dec. 19, 2002.

Rehearing Overruled Feb. 27, 2003.

Michael P. Maslanka, Theresa M. Gergen, Goodwin Gruber LLP, Dallas, Philip Durst, Wiseman, Durst, Owen & Colvin, P.C., Austin, for appellant.

Jefferson K. Brim, III, Richard L. Arnett, Brim, Arnett & Robinett, P.C., Austin, for appellees.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and PATTERSON.

MARILYN ABOUSSIE, Chief Justice.

A jury found for appellees, thirteen current and former Austin Police Department officers, on their age discrimination claims against appellant, the City of Austin Police Department ("APD"), based upon APD's decision to institute a policy that the jury determined to be a seniority system APD adopted for the purpose of intentional age discrimination. The jury awarded damages, and the court rendered judgment and, in a later hearing, awarded appellees attorney's fees. APD appeals the trial court's judgment. We will reverse the judgment of the trial court and remand for a new trial.

## BACKGROUND

Austin police officers typically serve as patrol officers or in specialized assignments. Although specialized assignments entail some of the same duties as patrol duty, they often have a specific focus and include assignments to the warrants divisions, D.A.R.E. (Drug Abuse Resistance Education) unit, canine unit, traffic unit, motorcycle unit, horse-mounted unit, narcotics unit, and criminal intelligence unit. Whether an officer serves as a patrol officer or in a specialized assignment, he or

she has identical rank, pay classifications, job benefits, and promotional opportunities.

In 1979, APD adopted the first of several policies governing how an officer could apply for a specialized assignment, the criteria for serving in a specialized assignment, how long an officer could hold such an assignment before being required to rotate back to patrol duty, and how long an officer had to serve on patrol duty before becoming eligible to apply for another specialized assignment. The initial APD policy allowed an officer to serve for three years in a specialized assignment but required officers to return to patrol duty for twelve months before becoming eligible for another specialized assignment. Later that year, APD amended the policy by granting the APD division commander discretion to retain senior officers in a specialized assignment beyond the three year period based on job performance.

In 1990, APD again amended its specialized assignment policy, allowing an officer to apply for an extension of a specialized assignment when a transfer would not be in the best interest of the department. The 1990 amendments also implemented an annual review of officer performance, after which a reviewing commander had discretion to reassign an officer in a specialized assignment to patrol or retain the officer in the special assignment.

By the mid–1990s, extensions of police officers' specialized assignments were frequent; consequently, officers were holding their respective assignments longer, resulting in fewer opportunities for other officers to rotate into specialized assignments. In 1993, Assistant Chief Ray Sanders requested a committee be formed to modify APD's specialized assignment policy. Sanders appointed Commander Cecil Huff as chairman of the committee and indicated that he wanted the commit-

tee to ensure that the selection process for specialized assignments was fair and to review the appeals process for officers who were not selected.

The committee produced a draft of a new policy but could not reach a consensus on how long an officer could stay in a specialized assignment before being required to transfer. Dissatisfied with the draft because it contained no such time limits, Sanders met with the committee to discuss the policy; still, it reached no consensus on time limits. Finally, Huff formed a second committee comprised of different members. The second committee produced another draft. APD executive staff considered the second committee's recommendations and created General Order 712 ("Policy 712"). Policy 712 imposed a five year cap on specialized assignments, removed any discretion which might extend an officer's assignment beyond five years, and established a rotation policy requiring officers who had served in a specialized assignment to return to patrol duty for at least three years before serving in another specialized assignment. The policy provided that the most tenured personnel would be rotated first. Policy 712 took effect in February 1994.

After APD adopted Policy 712, twenty-two plaintiffs brought suit claiming age discrimination. Eight plaintiffs were non suited, and an additional plaintiff was dismissed by agreement. When the trial commenced, the thirteen remaining plaintiffs proceeded on their claim of direct and intentional age discrimination resulting from APD's adoption of Policy 712. They further asserted at trial that the assignment and transfer policy in effect constituted a seniority system. Two of the thirteen plaintiffs also asserted retaliation claims. The plaintiffs alleged that the

transfer policy had a disparate impact on them but did not pursue that claim at trial.

A jury found for all thirteen plaintiffs on the theory of age discrimination and against the two plaintiffs who alleged retaliation. At the conclusion of the jury trial, the trial court held a hearing, received evidence, and awarded attorney's fees to the prevailing parties.

APD appeals the trial court's judgment, contending that appellees failed to prove an essential element of their claim entitling them to judgment, arguing that there is legally or factually insufficient evidence to support the jury's finding that the adoption of Policy 712 constituted intentional age discrimination, and asserting that the award of damages and attorney's fees was improper.

### DISCUSSION

In its first issue, APD argues that the district court erred by rendering judgment for appellees because they failed to obtain a jury finding that they suffered any "adverse employment action" at the hands of APD, focusing on appellees' complaints of unwanted transfers under Policy 712. APD objected to the omission of this element at trial, preserving the issue for appeal, and requests that we reverse and render judgment on behalf of APD. APD relies upon the *McDonnell Douglas* method of proof in support of its position. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the alternative, APD requests that we remand the cause for a new trial on the basis that, even if found, evidence that the policy required transfer and lateral rotation is legally and factually insufficient to prove that the officers suffered any adverse employment action through application of the policy.

### *Standards of Review*

■ We review a district court's submission of controlling issues *de novo*. *Continental Cas. Co. v. Street*, 379 S.W.2d 648, 651 (Tex.1964); *see also* W. Wendell Hall, *Standards of Review in Texas*, 34 St. Mary's L.J. 1, 124 (2002) ("[W]hen the complaint alleges that an element of a theory has been omitted in the questions or instructions—either because the court believed that it was established as a matter of law or an element of the theory of recovery was omitted—the appropriate standard of review should be *de novo*.") (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 240–41 (Tex.1992)).

■ To bring a legal sufficiency challenge, the appellant must demonstrate that there is no evidence to support the adverse finding. We must assess all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in favor of the judgment. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). When reviewing a factual sufficiency challenge to a matter on which the prevailing party had the burden of proof, we may reverse the judgment only if the challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so weak as to make the judgment clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

### *Jury Questions*

The jury was asked to answer the following questions:

> Question No. 1: Was the City of Austin's Police Department's decision to

adopt General Order No. 712, a decision to adopt a seniority system to intentionally discriminate on the basis of age?

To establish an intent to discriminate the plaintiffs must have proved that any reason given by the City of Austin's Police Department for the decision to adopt General Order No. 712 was a subterfuge, a pretext or cover up and that illegal age discrimination was the true reason for the decision to adopt General Order No. 712.

Answer: Yes

\* \* \* \* \* \*

Question No. 3: As to each of the plaintiffs named below, do you find that the Austin Police Department would have adopted General Order No. 712 even if age discrimination had not been an impermissible motivating factor?

Answer: No [as to each named plaintiff]

Question No. 4: What sum of money, if any, if paid now in cash, would fairly and reasonably compensate each officer named below for damages, if any, that resulted from the discrimination you found under Question No. 1....?

Consider the elements of damages listed below and none other ....
Compensatory damages [defined, including emotional pain, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary damages]

Answer: [Dollar amount awarded for each named plaintiff]

Thus, the jury found that APD adopted Policy 712 as a seniority system, that it did so in order to intentionally discriminate on the basis of age, that any other reason given was a pretext or cover up, and that age discrimination was the true reason for the decision; the jury failed to find as to

each plaintiff that APD would have adopted Policy 712 if age discrimination had not been a motivating factor. It awarded each plaintiff monetary compensation for the discrimination. Appellants do not expressly challenge the finding that Policy 712 was a seniority system.

We must decide whether, in addition, the officers were also required to prove that they suffered an "adverse employment action"—in other words, whether application of the policy constituted an employment practice materially adverse to them that caused them injury.

*Relevant Statutes*

In asserting their age discrimination claims, appellees alleged violations of the Texas Commission on Human Rights Act ("the Act").[1] Tex. Lab.Code Ann. §§ 21.001–.306 (West 1996 & Supp.2003). The relevant statutes provide as follows:

**§ 21.051. Discrimination by Employer**

An employer commits an unlawful employment practice if because of ... age the employer:

 (1) ... discriminates in any ... manner against an individual in connection with ... the terms, conditions, or privileges of employment; or

 (2) limits, segregates, or classifies an employee ... in a manner that would deprive or tend to deprive an individual of any employment opportunity....

**§ 21.102. Bona Fide Employee Benefit Plan; Production Measurement System**

(a) [A]n employer does not commit an unlawful employment practice by applying ... different terms, conditions, or privileges of employment under:

---

1. Tex.Rev.Civ. Stat. Ann. art. 5221k, now codified in Chapter 21 of the Texas Labor Code.

(1) a bona fide seniority system . . .

**§ 21.125. Clarifying Prohibition Against Impermissible Consideration of Race, Color, Sex, National Origin, Religion, Age, or Disability in Employment Practices**

(a) [A]n unlawful employment practice is established when the complainant demonstrates that . . . age . . . was a motivating factor for an employment practice, even if other factors also motivated the practice, unless . . . age . . . is combined with objective job-related factors to attain diversity in the employer's work force.

**§ 21.127. Expansion of Rights to Challenge Discriminatory Seniority Systems**

With respect to a seniority system adopted for an intentionally discriminatory purpose in violation of this chapter, . . . an unlawful employment practice occurs when:

(1) the seniority system is adopted;

(2) an individual becomes subject to the system; or

(3) an individual is injured by the application of the system . . . .

Tex. Lab.Code Ann. §§ 21.051, .102(a), .125(a), .127 (West 1996 & Supp.2003).

■ The legislature drafted the Act to "correlat[e] state law with federal law in the area of discrimination in employment." *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991). The relevant parts of the Act are patterned after Title VII of the federal Civil Rights Act of 1964. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex.2001). Consequently, Texas courts look to the pertinent federal decisional law to resolve discrimination claims. *Specialty Retailers v. De-Moranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Stinnett v. Williamson County*

*Sheriff's Dep't*, 858 S.W.2d 573, 576 (Tex. App.-Austin 1993, writ denied).

***Methods of Proof***

■ Both federal and state discrimination statutes prohibit an employer from intentionally discriminating against an employee with respect to material terms of employment on the basis of age. *Jaso v. Travis County Juvenile Bd.*, 6 S.W.3d 324, 328 (Tex.App.-Austin 1999, no pet.); *see also* 29 U.S.C.A. § 623(a) (West 2002); Tex. Lab.Code Ann. § 21.051. In a disparate treatment case, an employer treats some people less favorably than others based upon a prohibited trait. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In a disparate impact case, an employer may be liable where a facially neutral practice has a disproportionate impact on a protected group. *Griggs v. Duke Power Co.*, 401 U.S. 424, 428, 432–33, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■ A plaintiff who sues an employer under either the federal or Texas statutes can prove discrimination by different methods of proof. Courts recognize two types of employment discrimination cases. *Quantum*, 47 S.W.3d at 476. The first is the "pretext" case, demonstrated by indirect or inferential proof, in which the plaintiff's ultimate goal is to show that the employer's stated reason for its adverse action against the employee was a pretext for discrimination. *Id.*; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. 1817. The second type of case is the "mixed-motive" case, in which the plaintiff can show by direct evidence the employer's discriminatory animus in making the employment decision with respect to the employee. *Quantum*, 47

S.W.3d at 476. Once shown, the employer must then prove that it would have made the same decision for legitimate reasons even without the discriminatory motive. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). How a case is classified depends upon whether there is direct evidence of an illegitimate criterion. *Quantum,* 47 S.W.3d at 476. In either event, the case arises from an employment decision or practice adversely affecting the employee.

■■■■ Discrimination can be shown indirectly through circumstantial evidence by following the "pretext" method of proof. *See McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817. In *McDonnell Douglas,* the United States Supreme Court set out the order and allocation of proof to be followed in a pretext case. *Quantum,* 47 S.W.3d at 477. The burden shifting framework requires a plaintiff to establish a *prima facie* case of discrimination by showing that he or she was: (1) within the protected age group; (2) adversely affected or suffered an adverse employment action; and (3) similarly situated non-protected class members were not treated similarly. *McDonnell Douglas,* 411 U.S. at 801–03, 93 S.Ct. 1817; *see also Jaso,* 6 S.W.3d at 328. Once the plaintiff makes a *prima facie* showing of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the employer meets this burden, the plaintiff bears the burden of persuasion to show that the employer's proffered reasons are a mere pretext for discrimination. *Id.* The method of proof set forth in *McDonnell Douglas* ensures that the "plaintiff has his day in court despite the unavailability of direct evidence." *Mooney v. Aramco Services Co.,*

54 F.3d 1207, 1216 (5th Cir.1995) (quoting *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). The burden of persuasion remains with the plaintiff.

■■■■ The *prima facie* case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic. It is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (citing *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). Establishing a *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated against the employee. In rebuttal, the employer must produce admissible evidence of a legitimate reason for the employment decision. When the defendant fails to persuade the trial court to dismiss the action or render judgment for lack of a *prima facie* case, and responds with proof of the employer's reasons for the decision, the presumption has been rebutted and drops from the case. At that point, whether the plaintiff made a *prima facie* case of discrimination is no longer relevant. *Id.; see also Walther v. Lone Star Gas Co.,* 952 F.2d 119, 122 (5th Cir.1992). When the defendant has done everything that would be required had the plaintiff properly made out a *prima facie* case, whether the plaintiff actually did so is no longer relevant. *Aikens,* 460 U.S. at 715, 103 S.Ct. 1478. The trier of fact should proceed directly to the ultimate issue of whether the defendant intentionally discriminated against the plaintiff; an affirmative finding will be reviewed on appeal on the basis of whether the plaintiff produced sufficient evidence for the jury to find discrimination had occurred. The

question of whether a plaintiff made out a *prima facie* case of discrimination has no place in the jury room. *See Walther,* 952 F.2d at 126–27.

■ If, on the other hand, a plaintiff produces direct evidence of discrimination, the *McDonnell Douglas* framework of proof does not apply. *See Thurston,* 469 U.S. at 119, 105 S.Ct. 613. When an employee presents direct evidence of discrimination against the employee, but the employer asserts that the same adverse employment decision would have been made regardless of discrimination, the *Price Waterhouse* mixed-motive theory applies. *Mooney,* 54 F.3d at 1216; *see also Price Waterhouse,* 490 U.S. at 244–45, 109 S.Ct. 1775 ("[O]nce a plaintiff in a Title VII case shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role."). Unlike *McDonnell Douglas,* which simply involves a shifting of the burden of production, *Price Waterhouse* involves shifting the burden of persuasion to the defendant. *Mooney,* 54 F.3d at 1216–17. In other words, under *Price Waterhouse,* once a plaintiff presents direct evidence of discrimination, the burden of proof shifts to the employer to show the same employment decision would have been made regardless of the discriminatory animus.[2] *Id.* at 1217; *see also* Michael J. Zimmer, *Chaos or Coherence: Individual Disparate Treatment Discrimination and the ADEA,* 51 Mercer L.Rev. 693, 695 (2000). If the employer fails to carry this burden, the plaintiff prevails.

■ Prior case law and the *Price Waterhouse* opinion make clear that the mixed-motives and pretext methods require different elements of proof. The fundamental prerequisite to the mixed-motives instruction is the presentation of direct evidence of discrimination. *Mooney,* 54 F.3d at 1217. In *Price Waterhouse,* the plaintiff's candidacy for partnership was put on hold, and she brought a Title VII sex-discrimination action. *Price Waterhouse,* 490 U.S. at 233, 109 S.Ct. 1775. The plaintiff produced evidence in the form of various partners' statements that she was "macho," "overcompensated for being a woman," and should "take a course at charm school" and "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." · *Id.* at 235, 109 S.Ct. 1775. Without expressly defining "direct evidence,"[3] a majority of the Court held that this evidence was sufficient to shift the burden of persuasion to Price Waterhouse to prove that it would have made the same employment decision regardless of the plaintiff's gender. *See id.* at 244–45, 109 S.Ct. 1775; *id.* at 261, 109 S.Ct. 1775 (White, J., concurring); *id.* at 279, 109 S.Ct. 1775 (O'Connor, J., concurring).

2. Under *Price Waterhouse,* the employer's successful showing relieved the employer of liability. Both the federal and state statutes now provide that the employer's showing that the employment decision would have been made in any event only limits the employee's remedies but not the employer's liability.

3. In her *Price Waterhouse* concurrence, Justice O'Connor concludes that in order to shift the burden of persuasion to the employer, "the plaintiff must produce evidence sufficient to show that an illegitimate criterion was a substantial factor in the particular employment decision such that a reasonable factfinder could draw an inference that the decision was made 'because of' the plaintiff's protected status." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 278, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring).

The United States Court of Appeals for the Fifth Circuit has expressly defined "direct evidence" as "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *See Mooney*, 54 F.3d at 1217 (citing *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858 (5th Cir.1993)). In *Mooney*, employees brought a class action against their employer alleging unlawful termination in violation of the Age Discrimination in Employment Act. *Id.* at 1211. The plaintiffs produced evidence of allegedly discriminatory statements made by their supervisors:

> Thim's supervisor said he wanted to replace Thim with a "younger and cheaper" engineer. Olson's supervisor said it "must have been your age." Williams's supervisor declared that plaintiff would have a "good case of age discrimination." Mooney heard Dan Christy—the man who recommended his discharge—tell a younger engineer that Aramco was "going to get rid of the older employees with the higher salaries."

*Id.* at 1218. The Fifth Circuit ultimately concluded that these statements failed to constitute *Price Waterhouse* direct evidence because the plaintiffs had failed to show that "the employer *actually relied on* [the forbidden factor] in making its decision." *Id.* (quoting *Langley v. Jackson State Univ.*, 14 F.3d 1070, 1075 (5th Cir. 1994)). The court reasoned that two of the statements were "primarily indicative of a desire to save money by employing persons at lower pay," while the other two statements "merely constitute[d] speculation as to possible discrimination in the termination of Trial Plaintiffs." *Id.*

Obviously, not all comments reflecting a discriminatory attitude constitute direct evidence. The United States Court of Appeals for the Eighth Circuit has distinguished

comments which demonstrate a "discriminatory animus in the decisional process" or those uttered by individuals closely involved in employment decisions, from "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process." While evidence of the former type of remark might be sufficient to entitle a plaintiff to a *Price Waterhouse* instruction, we reject the latter as insufficient.

*Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448–49 (8th Cir.1993); *see also Jaso*, 6 S.W.3d at 330–31 ("Mere stray marks, without more, are insufficient to establish a claim of age discrimination."); Jeff Morneau, *Too Good, Too Bad: "Overqualified" Older Workers*, 22 W. New Eng. L.Rev. 45, 54–57 (2000). "The clearest example of 'direct evidence' of discrimination would be 'evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents.'" *Glover–Dorsey v. University of Tex. Med. Branch*, 147 F.Supp.2d 656, 662 (S.D.Tex.2001) (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994)).

There are, as might be expected, few reported cases of direct evidence discrimination, and fewer yet involving a seniority system. Appellees direct us to the *TWA* case, which involved a facially discriminatory system, unlike the one at issue here. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). They rely particularly on *Lorance*, involving the limitations period for a facially neutral but allegedly intentionally discriminatory seniority system which, upon adoption, immediately had a negative disparate impact on the female employees because it unfavorably altered their contractual seniority rights. *See Lorance v. AT & T Technologies, Inc.*, 490

U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). Policy 712 did not immediately affect appellees' seniority rights in that manner, and appellees did not proceed on a disparate impact theory. Our research reveals no case exactly on point.

### Direct or Indirect Evidence?

 To classify the cause before us, we must first decide whether appellees introduced direct evidence of age discrimination. Appellees point to statements by Assistant Police Chiefs Ray Sanders and Reuben Lopez as direct evidence of discriminatory animus. In response to inquiries about why time limits on specialized assignments were necessary, Sanders answered, "We need to move some of these older officers out and give these younger guys a chance at these jobs"; "We want to get you old guys out of there and get some young guys in"; and "We're trying to get rid of you old guys." Lopez commented that the time limits were necessary in order "to have some new blood" in specialized assignments. Because these statements by one closely involved in decision making go directly to the adoption of the policy, they are proof of discriminatory animus without inference or presumption. *See Mooney*, 54 F.3d at 1217.

 Appellant argues, as it did at trial, that any comments about "young" or "old" officers refer to the time or experience an officer has in a position, not to an officer's chronological age. Even assuming such references sometimes carry that

connotation, the statements themselves do not reveal such an alternative meaning, and the jury found otherwise. Unlike the statements in the *Mooney* case, which indicate that the declarant is primarily concerned with saving money, these statements indicate that "older" officers are being moved in order to be replaced by "younger" officers. Age is the *only* factor articulated in response to the officers' inquiries about the reason for time limits on specialized assignments; therefore, the statements suggest that "the employer *actually relied on* [the officers' age] in making its decision." *See id.* at 1218. Furthermore, Sanders's and Lopez's statements are not speculative; they identify the reason for the time limits with certainty. *See id.* at 1218–19. In addition, these statements were made by Assistant Police Chiefs, or "individuals closely involved in employment decisions" for the APD, and are therefore "sufficient to entitle a plaintiff to a *Price Waterhouse* instruction." *See Zip Feed Mills*, 997 F.2d at 448–49. Finally, these statements clearly "can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *See Glover–Dorsey*, 147 F.Supp.2d at 662. We conclude that Sanders's and Lopez's statements reflect direct evidence[4] that APD actually relied on the officers' age in making the decision to adopt Policy 712 and impose time limits on specialized assignments.[5]

---

**4.** Even if Sanders's and Lopez's statements do not constitute direct evidence of discrimination, because the case was fully tried on the merits we do not believe that fact to be controlling. The United States Court of Appeals for the Fifth Circuit instructs that after an employment discrimination case has been tried on the merits, the proper inquiry is whether the judgment is supported by sufficient evidence. *See Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 933 (5th Cir. 1996); *Haun v. Ideal Indus., Inc.*, 81 F.3d

541, 546 (5th Cir.1996) ("On appeal of a jury's verdict of age discrimination, we need not address the sufficiency of [the plaintiff's] prima facie case, but proceed to determine whether there was sufficient evidence upon which a jury could find that discrimination occurred.").

**5.** We note that appellees' ability to produce direct evidence of discriminatory animus did not result in an automatic judgment in their favor; the existence of direct evidence only

### Adverse Employment Action

Appellant contends that any evidence of discriminatory intent is merely indirect and that, in any event, a jury finding of an adverse employment action is a required element of an employment discrimination cause of action. APD contends that without this finding, we must render judgment in its behalf or at least reverse for a new trial. At the same time, APD admits that sometimes the adverse action is a "given," in which case no finding is required despite its being a required element.

In response, appellees argue that, because they proved their case by direct evidence of discrimination, they were not required to present a *prima facie* case and thus were not required to prove they suffered an adverse employment action. In effect, they contend that the adoption of the policy alone constituted adequate proof of their injury, and thus they did not have an obligation to prove anything other than that an unlawful policy was adopted, without further proof of how it harmed them.

■■■■■■ Establishing an unlawful employment practice is, of course, the entire point of the plaintiff's suit, regardless of whether it is a pretext or mixed-motive case. *See Quantum,* 47 S.W.3d at 478. The factual inquiry is whether the defendant intentionally discriminated against the plaintiff. *See Aikens,* 460 U.S. at 715, 103 S.Ct. 1478; *see also Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. Even so, the discrimination must be directed against the complaining employee. The crucial issue involves whether the employer used age as a determinative factor in making an employment decision involving a particular employee or group of employees. *See Woodhouse v. Magnolia Hosp.,* 92 F.3d

248, 252–53 (5th Cir.1996). The court should instruct the jury to consider the ultimate question of whether the defendant made the decision because of the plaintiff's age. *Id.* at 257. When a case has been fully tried on the merits, the adequacy of the showing at any stage of the *McDonnell Douglas* framework is unimportant; rather, the reviewing court may proceed directly to the ultimate question to determine whether there was sufficient evidence from which a reasonable trier of fact could have concluded that age discrimination occurred. *See id.* at 252–53; *see also Walther,* 952 F.2d at 122–23.

■■■■ Direct evidence of discriminatory intent, however, does not end the inquiry. The Texas Supreme Court has stated that the Act "requires an employment discrimination plaintiff to show that discrimination was a motivating factor in an adverse employment decision," regardless of whether the case is classified as a mixed-motive or pretext case. *Quantum,* 47 S.W.3d at 482. And the fact that appellees' complaint goes to adoption of a policy found to be a seniority system does not lessen their burden. Section 21.051 of the labor code states circumstances in which an employer has committed an unlawful employment practice; under the statute, the practice must be directed against the employee. Tex. Lab.Code Ann. § 21.051. Section 21.125(a) explicitly describes what a complainant must show in order to prevail. *Id.* § 21.125(a). Section 21.127 confirms that a finding of intentional discrimination is required with respect to a seniority system and sets out the three events which trigger accrual of the cause of action relating to adoption of a discriminatory seniority system. *Id.* § 21.127. By whatever method the plaintiffs proceed, however,

shifted the burdens of production and persuasion to APD to show that it would have made the same employment decision regardless of

appellees' age. *See Price Waterhouse,* 490 U.S. at 244–45, 109 S.Ct. 1775. The jury failed to find that APD would have done so.

they must establish that the employer made an employment decision adverse to the employees for a prohibited reason.

■ Assuming the officers presented their case by means of direct evidence and proved that the APD adopted a seniority system in order to discriminate, they must still prove that the policy adversely affected them, that is, that Policy 712 had a discriminatory effect on them. The United States Court of Appeals for the Fifth Circuit has addressed similar issues in pretext cases, but the underlying principles apply to a mixed-motive case, as well. Just as in any case, the court's task is to determine the injuries caused by discrimination that require judicial relief. *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 560 (5th Cir.1998). In other words, regardless of the discriminatory practice asserted, the employee must prove that the unlawful practice caused the employee injury.

■ In the majority of employment discrimination cases, the asserted injury is an obvious adverse employment action, such as a hiring or firing decision, resulting from discrimination based upon a prohibited trait, such as race or age. *Id.* Because this case does not involve an obvious ultimate adverse decision, the injury, if any, is less clear; the characterization of Policy 712 as a seniority system further complicates what plaintiffs must prove. Appellees argue that violation of the statute alone—that is, the mere adoption of a policy with discriminatory intent—constitutes the compensable injury. Although the argument is appealing, we cannot agree. Damages must be based on something more than an abstract violation of a statute. The policy is not discriminatory on its face, as in *TWA*, nor does it produce an immediate negative effect on the officers' contractual seniority rights, as in *Lorance*. A plaintiff must suffer and prove some cognizable, compensable injury in fact, of which the violation is a legal and proximate cause. Thus, even though the policy may have been adopted for an unlawful reason, appellees failed to prove how application of the policy discriminated against them and caused them injury that would entitle them to compensation.

In *Tyler*, the court found that plaintiff Price did not produce evidence of an adverse employment action to support the jury's ruling in his favor. *Tyler v. Union Oil Co.*, 304 F.3d 379, 395–96 (5th Cir. 2002). In response to the employer's complaint that Price failed to prove he suffered an adverse employment action, Price argued that the *prima facie* method of proof was no longer relevant once the case went to the jury. *Id.* at 393–94. In deciding the matter, the court stated that cases supporting Price's proposition relate to elements proving discrimination, not injury. *Id.* (citing *Aikens*, 460 U.S. at 713–14, 103 S.Ct. 1478; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 224 (5th Cir.2000)). The court held that a plaintiff who proves discrimination must still prove injury in order to recover damages. *Id.; see also Armstrong*, 141 F.3d at 560 (to recover damages, plaintiff must prove cognizable injury). The plaintiffs here recovered damages because the APD adopted a discriminatory policy. To sustain the damage award, the plaintiffs were required to show that they suffered a cognizable injury caused by the adoption of the seniority system.

The policy and the evidence reflect that Policy 712 required the officers to be transferred from specialized assignments to patrol duty under specified terms. Even on appeal, appellees do not point out any other negative effect on their terms, conditions, or privileges of employment; nor do they show how the resulting classification deprived them of any employment

opportunity. In fact, several of the officers who prevailed were never actually transferred, although they may remain subject to transfer. It is undisputed that all officers have the same rank, pay classification, job benefits, and promotional opportunities regardless of their assignment. The officers argue that adoption of the policy for an unlawful reason in itself was an adequate showing of injury and that they need not prove further adverse impact. They point out that they presented evidence that the policy caused them unwanted transfers, unwelcome rotations, and resulted in limitations on preferred assignments. They described their personal suffering as a result of the adoption of the policy, arguing that damages were properly awarded them for inconvenience and loss of enjoyment of life. They did not seek to show that the policy had a disparate impact on them or resulted in their disparate treatment.

■■■ Although a lateral transfer may under certain circumstances give rise to an employment discrimination action, as a general proposition an employer's policy of job assignment is not compensable.[6] As appellant concedes, in some cases an apparently lateral transfer may in actuality result in an adverse employment situation amounting to, for example, a demotion. See Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir.1999) (transfer of officer from elite unit to severely worse unit held to be adverse under section 1983 claim).

Generally, lateral transfers and rotations promoting reasonable business purposes do not rise to a level of an adverse action without a further showing of harm. See Serna v. City of San Antonio, 244 F.3d 479, 482–83 (5th Cir.2001) (in whistle-blower case, transfer without cut in pay or benefits may be adverse action but plaintiff must show transfer caused plaintiff serious, objective, tangible harm). Although we recognize that these cases do not involve seniority systems, similar principles apply.

For purposes of this appeal, we hold that the evidence proffered by the appellees constituted direct evidence of intent to discriminate with respect to adoption of Policy 712. Nevertheless, we hold that even in the face of direct evidence of an intent to discriminate, the officers must prove that the employment decision in fact caused the officers to suffer a discriminatory adverse employment action. This they failed to do. Ordinarily, failure to submit a necessary issue would require reversal. In this instance, in light of these unique facts, and the absence of controlling law, we believe the interest of justice requires a new trial. See Tex.R.App. P. 43.3(b). Appellant expressly invites this relief in the alternative.[7]

Because no case has expressly required a finding of injury under similar facts, in the interest of justice we reverse the cause and remand the matter for a new trial. In

---

**6.** We note that when asked in Question No. 2 whether as to the two officers asserting a retaliation claim a lateral transfer was an adverse employment action, the jury answered in the negative.

**7.** Appellant argues in the alternative that, had the jury found the required element, the record contains legally and factually insufficient evidence to support a finding in appellees' favor. Reviewing the evidence under the proper standards of review, we hold that had

the issue been asked the record contains some evidence of injury and therefore we cannot say that the evidence is legally insufficient to prove the fact. Without repeating the evidence set out herein, however, we hold that the evidence in the record is so weak as to make the judgment clearly wrong and therefore factually insufficient to prove the policy caused the officers to experience adverse harm, requiring a remand.

light of our disposition, we need not address appellant's remaining points of error.

## CONCLUSION

Appellees proffered direct evidence of APD's discriminatory animus; nevertheless, they were required to prove that Policy 712 discriminated against them and caused them to suffer an adverse employment action. Because we hold that under these unique facts the inquiry should have been made, we reverse the judgment of the district court and remand for new trial.