TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00199-CV






Valentine Cantu, Maria Padilla, Carolyn Chatham, Suzanne Hoog-Watson

and George Denton, Appellants


v.


Texas Workforce Commission and Employees Retirement

System of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NO. GN001454, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





O P I N I O N 



 In a suit alleging age discrimination under the Texas Commission on Human Rights
Act, the district court granted summary judgment in favor of the Texas Workforce Commission and
the Employees Retirement System, dismissing all discrimination claims and declaring that the
Retirement System did not violate former government code section 814.1041(b). See Act of May
28, 1997, 75th Leg., R.S., ch. 1048, § 13, 1997 Tex. Gen. Laws 3986, 3989 (formerly codified as
Tex. Gov't Code Ann. § 814.1041), repealed by Act of June 1, 2003, 78th Leg., R.S., ch. 1111,
§ 46(5), 2003 Tex. Gen. Laws 3178, 3188. Valentine Cantu, Maria Padilla, Carolyn Chatham,
Suzanne Hoog-Watson, and George Denton appeal the summary judgment, claiming that age was
a motivating factor in both the Workforce Commission's decision to terminate their employment and
the Retirement System's implementation of an early retirement program that denied potential
benefits to some of them. Appellants also claim that summary judgment was improper because fact
issues exist regarding the proper interpretation of former government code section 814.1041(b) and
whether the administrative charges filed by Maria Padilla and Carolyn Chatham served as a catalyst
for the Retirement System's revised construction of the section. Finally, appellants assert that the
improper exclusion of evidence precludes summary judgment. We affirm the summary judgment
because (1) appellants did not establish a prima facie case of age discrimination, (2) the plain
language and legislative history of section 814.1041(b) support the Retirement System's
construction, and (3) the trial court did not abuse its discretion by denying the request for attorney's
fees or excluding evidence. 

BACKGROUND

 In 1995, the 74th Texas Legislature enacted House Bill 1863 which, among other
things, called for the privatization of certain Workforce Commission programs by consolidating the
programs and placing them under the control of local workforce development boards. See Act of
May 26, 1995, 74th Leg., R.S., ch. 655, § 11.03, secs. 302.021 & 302.023, 1995 Tex. Gen. Laws
3543, 3590. The Workforce Commission was charged with implementing the privatization plan.
Valentine Cantu, Maria Padilla, Carolyn Chatham, Suzanne Hoog-Watson, and George Denton were
all employees of the Workforce Commission and worked in a program that was set for elimination. 
In early 1998, the targeted programs were eliminated and all their employees were terminated.

 In response to the privatization plan, the legislature passed Senate Bill 1102 to create
retirement incentives for public employees terminated by the plan. See Act of May 28, 1997, 75th
Leg., R.S., ch. 1048, § 13, 1997 Tex. Gen. Laws 3986, 3989 (formerly codified as Tex. Gov't Code
Ann. § 814.1041), repealed by Act of June 1, 2003, 78th Leg., R.S., ch. 1111, § 46(5), 2003 Tex.
Gen. Laws 3178, 3188 (hereinafter cited as Former Gov't Code § 814.1041). Sections of the
government code were amended to provide an affected employee a three-year bonus to be added to
both the employee's age and service period if doing so would make that employee eligible for
retirement. The retirement annuity of an employee made eligible for retirement as a result of the
bonus would be computed from the employee's accrued service period increased by three years. The
Retirement System initially interpreted the amendments to grant a qualifying employee only as much
of the service-period bonus as necessary to become eligible for retirement. However, in March 1999,
former Attorney General John Cornyn opined that the Retirement System's interpretation was
incorrect and that qualifying employees should receive the entire three-year credit, even if less was
needed to make the employee eligible for retirement. See Op. Tex. Att'y Gen. No. JC-0027 (1999). 
The Attorney General endorsed the Retirement System's interpretation that employees who were
already eligible for retirement would receive no bonus.

 Appellants filed this suit in an effort to remedy the alleged discrimination and clarify
the meaning of former government code section 814.1041. See id. The district court granted
summary judgment in favor of the Workforce Commission and the Retirement System, dismissing
the age discrimination claims, declaring that the Retirement System did not violate former
government code section 814.1041(b), and denying appellants' request for attorney's fees under the
Uniform Declaratory Judgments Act. Appellants bring this appeal.


DISCUSSION

Age discrimination claims 

 In their first issue appellants allege that, because age played a motivating role in the
terminations and the refusal to grant the bonus to certain employees, both the Workforce
Commission and the Retirement System committed age discrimination under the Texas Commission
on Human Rights Act. See Tex. Lab. Code Ann. § 21.051 (West 1996), § 21.125(a) (West Supp.
2004). We first address the issue of age discrimination as it relates to the terminations.

 The Workforce Commission contends that there is no evidence that Valentine Cantu
or any of his fellow employees were terminated because of their age and that the district court
properly granted the no-evidence summary judgment on the issue of age discrimination. In general,
a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or
more of the essential elements of the nonmovant's claims on which it would have the burden of
proof at trial. Holmstrom v. Lee, 26 S.W.3d 526, 530 (Tex. App.--Austin 2000, no pet.). Once the
movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to
raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i). To raise a genuine issue of
material fact, the nonmovant must set forth more than a scintilla of probative evidence as to an
essential element of each claim on which the nonmovant would have the burden of proof at trial. 
See Holmstrom, 26 S.W.3d at 530; Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997). When the evidence supporting a finding rises to a level that would enable reasonable,
fair-minded persons to differ in their conclusions, more than a scintilla of evidence exists. Havner,
953 S.W.2d at 711. A no-evidence summary judgment is essentially a directed verdict granted
before trial, to which we apply a legal-sufficiency standard of review. Jackson v. Fiesta Mart, Inc.,
979 S.W.2d 68, 70 (Tex. App.--Austin 1998, no pet.). Thus, appellants must present evidence that
raises a genuine issue of material fact in response to the Workforce Commission's claim that no
evidence exists to demonstrate age discrimination.

 Appellants' claim is that the reduction in force was a pretext for the underlying
motive of eliminating higher-paid older workers. Appellants have offered only circumstantial
evidence to prove their claim. In Texas, "[d]iscrimination can be shown indirectly through
circumstantial evidence by following the 'pretext' method of proof." City of Austin Police Dep't v.
Brown, 96 S.W.3d 588, 596 (Tex. App.--Austin 2002, pet. dism'd); see also McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 802-05 (1973) (outlining order and allocation of proof to be followed
in pretext case); Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 477 (Tex. 2001). The pretext
method of proof first requires that the complainant establish a prima facie case of discrimination. 
City of Austin Police Dep't, 96 S.W.3d at 596. A prima facie case of age discrimination is
demonstrated if the complainant was (1) within the protected age group, (2) adversely affected or
suffered an adverse employment action, and that (3) similarly situated non-protected class members
were not treated similarly. (1) Id. If a prima facie case is established, then the burden shifts to the
employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. 
McDonnell-Douglas, 411 U.S. at 802. Once the employer articulates a nondiscriminatory reason for
the termination or rejection, then the burden shifts back to the complainant to demonstrate that the
employer's stated reason was a pretext for discrimination. Id.

 Although the appellants can show that they were within a protected age group and that
they suffered an adverse employment action, they cannot demonstrate that similarly situated non-protected class members were treated more favorably. All of the employees of the targeted
programs, young or old, were terminated in conjunction with the Workforce Commission's
implementation of the privatization plan. With respect to the Retirement System, appellants cannot
demonstrate that they suffered an adverse employment action because they were not employed by
the Retirement System. See Tex. Lab. Code Ann. § 21.051 (stating that an "employer commits an
unlawful employment practice . . . .") (emphasis added). We conclude that appellants have failed
to produce more than a scintilla of evidence to rebut the Workforce Commission's claim that no
evidence exists as to the third element establishing a prima facie case of age discrimination. (2) 
Because appellants have failed to establish a prima facie case of age discrimination against either
the Workforce Commission or the Retirement System, it is unnecessary for us to reach the second
and third steps of the pretext analysis.

 Nevertheless, appellants assert that, if age was at all a motivating factor for decisions
made by the Workforce Commission or the Retirement System, then an unlawful employment
practice has been established. See id. § 21.125(a) (if age is motivating factor for employment
practice, even if other factors also motivated practice, then unlawful employment practice has been
established). Appellants argue that a report entitled "Texas Performance Review," in which former
Comptroller John Sharp recommends that the state should adopt an early retirement incentive plan,
is evidence that age was a motivating factor in the decision made by the Workforce Commission and
the Retirement System. Although the record is unclear as to exactly when Sharp's report was
published, it is evident that it was after the 74th Legislature decided in 1995 to privatize certain
Workforce Commission programs. (3) In addition, Sharp's comments were directed to the state as an
employer and not to individual state agencies, such as the Workforce Commission. Thus, Sharp's
comments could not have influenced any of the Workforce Commission's decisions. Appellants
have failed to show that age played a factor in any of the decisions made by the Workforce
Commission.

 Additionally, appellants assert that the actions of the Workforce Commission and the
Retirement System disparately impacted older employees. Disparate impact claims arise from
"employment practices that are facially neutral in their treatment of different groups but that in fact
fall more harshly on one group than another and cannot be justified by business necessity." Hazen
Paper Co. v. Biggins, 507 U.S. 604, 609 (1993) (quoting International Bhd. of Teamsters v. United
States, 431 U.S. 324, 335-36 n.15 (1977)). We apply the judicial interpretation of the Age
Discrimination in Employment Act of 1967 (ADEA) when determining the availability of and
burden of proof applicable to a disparate impact case based on age discrimination. Tex. Lab. Code
Ann. § 21.122(b) (West 1996). The Fifth Circuit has recently held that, "a disparate impact theory
of liability is not cognizable under the ADEA," and this Court has followed that precedent. Smith
v. City of Jackson, Mississippi, No. 02-60850, 2003 U.S. App. LEXIS 23125 at *34, ___ F.3d
___(5th Cir. Nov. 13, 2003); see Texas Parks & Wildlife Dep't v. Dearing, ___ S.W.3d ___, ___,
No. 03-03-00131-CV, slip op. at 21 (Tex. App.--Austin Jan. 8, 2004, no pet. h.). Although some
non-age factors may be "so related to age that they are mere proxies," id. at *6, here the reduction
in force was caused by the privatization of entire programs that affected all employees of whatever
age. Therefore, appellants have asserted no colorable disparate-impact claim. Additionally, the
Retirement System could not have engaged in an unlawful employment practice as to these
employees because it was not their employer. See Tex. Lab. Code Ann. § 21.051 (West 1996).

 Similarly, neither the Workforce Commission nor the Retirement System committed
age discrimination under the Texas Commission on Human Rights Act by granting some employees
the extra retirement benefits authorized by former government code section 814.1041(b). (4) See
Former Gov't Code 814.1041(b). Section 21.102(a)(1) of the Texas Commission on Human Rights
Act states,


(a) . . . [A]n employer does not commit an unlawful employment practice by
applying different standards of compensation or different terms, conditions, or
privileges of employment under:

 

 (1) a bona fide seniority system, merit system, or an employee benefit plan,
such as a retirement, pension, or insurance plan, that is not a subterfuge to
evade this chapter[.]



Tex. Lab. Code Ann. § 21.102 (West 1996). The Workforce Commission laid off everyone
employed in the affected programs as mandated by the legislature. Its actions were not a subterfuge
designed to evade the Human Rights Act. Furthermore, appellants have offered no evidence that
demonstrates a subterfuge perpetrated by the Workforce Commission. Therefore, the Workforce
Commission did not commit an unlawful employment practice by complying with the Retirement
System's interpretation of former government code section 814.1041(b). Again, the Retirement
System could not have committed age discrimination under the Texas Commission on Human Rights
Act because it did not employ the affected employees. See id. § 21.051. We therefore overrule
appellants' first issue.


Former government code section 814.1041(b) 

 Appellants' second issue alleges that the district court erred when it refused to declare
that the Retirement System had violated the express terms of former government code section
814.1041(b). See Former Gov't Code 814.1041(b). Appellants argue that the Retirement System
violated the section by interpreting it to mean that terminated employees who were already eligible
to retire under the "Rule of 80" (5) in government code section 814.104 could not receive additional
benefits under section 814.1041(b). See id.; Tex. Gov't Code Ann. § 814.104(a)(2) (West Supp.
2004). The district court disagreed with appellants and granted summary judgment in favor of the
Retirement System on this issue.

 Summary judgment is available when there are no genuine issues of material fact and
the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Thus, summary
judgments are subject to de novo review. Vanliner Ins. Co. v. Texas Workers' Comp. Comm'n, 999
S.W.2d 575, 577 (Tex. App.--Austin 1999, no pet.). Statutory interpretation is also a question of
law subject to de novo review. Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002);
In re Canales, 52 S.W.3d 698, 701 (Tex. 2001). Our primary goal is to ascertain and effectuate the
legislature's intent. Albertson's, Inc. v. Sinclair, 984 S.W.2d 958, 960 (Tex. 1999). In doing so we
begin with the statute's plain language because we assume that the legislature tried to say what it
meant and, thus, that its words are the surest guide to its intent. Fitzgerald v. Advanced Spine
Fixation Sys., Inc., 996 S.W.2d 864, 865-66 (Tex. 1999).

 At the time of this dispute, former government code section 814.1041 provided:




 This section applies only to members of the employee class whose positions
with the Texas Workforce Commission [other listed agencies omitted] are
eliminated as a result of contracts with private service providers or other
reductions in services provided by those agencies and who separate from state
service at that time.


 


 A member described by Subsection (a) is eligible to retire and receive a service
retirement annuity if the member's age and service credit, each increased by
three years, would meet age and service requirements for service retirement
under Section 814.104(a) at the time the member separates from state service
as described by Subsection (a). The annuity of a person who retires under this
subsection is computed on the person's accrued service credit increased by
three years.




See Former Gov't Code 814.1041 (emphasis added). It is clear that appellants were affected by the
privatization plan and were part of a class of employees who were potentially eligible to receive the
credits. Thus, they would meet the criteria outlined in section 814.1041(a). However, section
814.1041(b) outlines a second condition that must be met to receive the service-credit bonus. It
plainly states that an employee "is eligible to receive a service retirement annuity if the member's
age and service credit each increased by three years, would meet age and service requirements . . .
under Section 814.104(a)." Id. (emphasis added); see Tex. Gov't Code Ann. § 814.104(a). The
phrase "would meet" indicates that section 814.1041(b) was intended to provide an alternative means
of measuring retirement eligibility for those employees affected by the privatization plan who had
not already met the age service requirements under the Rule of 80. Furthermore, the use of the
conditional "if" and "would" limits the applicability of the section to those employees who would
not otherwise meet the traditional retirement eligibility requirements outlined in government code
section 814.104(a). An employee who is already eligible to retire has met those requirements. 
Therefore, only an employee who was not already eligible to retire would benefit from the additional
three years added to the employee's age and service credits.

 When construing a statute, we may also consider legislative history as part of our
efforts to ascertain and effectuate the intent of the legislature. Tex. Gov't. Code Ann. § 311.023(3)
(West 1998). The fiscal note that accompanied Senate Bill 1102--the legislation that originally
contained former government code section 814.1041--states, "Among the changes that will have
an actuarial impact are . . . earlier retirement eligibility for certain employees of the Texas
Workforce Commission." Fiscal Note, Tex. S.B. 1102, 75th Leg., R.S. (1997) (emphasis added). 
In addition, the bill analysis on Senate Bill 1102 describes the contested provision as follows:


[It] adds a new section 814.1041 to provide service retirement option for employees
of Texas Workforce Commission . . . whose positions are eliminated as a result of
privatization. Two options are provided. One allows members whose positions are
eliminated to retire upon separation if adding 3 years of age and 3 years of service
credit makes them eligible for retirement. . . .



House Comm. on Pensions & Invs., Bill Analysis, Comm. Substitute Tex. S.B. 1102, 75th Leg., R.S.
(1997) (discussion of second option omitted because it is contained in former section 814.1041(c),
which is not in dispute). Both the fiscal note and the bill analysis imply that section 814.1041(b) is
designed to provide early retirement for employees affected by privatization who were not yet
eligible to retire. The fiscal note does so explicitly. The bill analysis does so inferentially by using
the word "makes" when describing the retirement option provided by the section. A person who is
already eligible for retirement cannot be made eligible, when he already is eligible. Early retirement
is not meaningful for employees who are already eligible to retire at will. Therefore, the Retirement
System's interpretation of the section is in accord with the legislative intent as expressed in the
legislative history of the statute.

 Because both the plain language of the statute and its legislative history support the
Retirement System's interpretation, we overrule appellants' second issue.


Catalyst theory

 In their third issue, appellants argue that, because their case served as the catalyst that
led to the revision of the Retirement System's interpretation of former government code section
814.1041(b), the district court erred by refusing to grant declaratory relief in the form of attorney's
fees. Initially, the Retirement System construed former government code section 814.1041(b) to
mean that, if an employee became eligible for retirement because of the three-year bonus added to
each age and service credits, that employee received only as much of the service-credit bonus for
retirement-annuity purposes as was necessary to meet the Rule of 80. Attorney General Cornyn then
issued an opinion that an employee eligible for the bonus must receive the entire three-year service
credit, regardless of whether the employee needed all three service-credit years to meet the Rule of
80. See Op. Tex. Att'y Gen. No. JC-0027 (1999). In response, the Retirement System recalculated
the retirement annuities of all employees who did not receive the full service credit and paid them
the balance due with interest. Appellants allege that the discrimination charges filed with the Texas
Commission on Human Rights by Chatham and Padilla served as a catalyst for the Attorney
General's opinion and the Retirement System's subsequent recalculations. Therefore, appellants
assert that appellants should receive attorney's fees under the Uniform Declaratory Judgments Act. 
See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997) (stating that a court may award
attorney's fees as are equitable and just).

 We review a court's decision to award attorney's fees under an abuse of discretion
standard. Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998). A court abuses its discretion when
it rules arbitrarily and unreasonably, without regard to guiding legal principles, or without supporting
evidence. Id. The Texas Uniform Declaratory Judgments Act does not require that a party prevail
in order to receive an award of attorney's fees. See Del Valle Indep. Sch. Dist. v. Lopez, 863 S.W.2d
507, 512-13 (Tex. App.--Austin 1993, writ denied) (if legally sufficient evidence supports finding
that appellee's lawsuit was catalyst for change in policy, then attorney's fees may be awarded despite
fact that appellees were not deemed prevailing party). Nor does the act require that a prevailing party
receive attorney's fees. Barshop v. Medina County Underground Water Conservation Dist., 925
S.W.2d 618, 637-38 (Tex. 1996); see Lopez, 863 S.W.2d at 513 (trial court is given broad discretion
to award attorney's fees under act). However, there is not legally sufficient evidence to support
appellants' theory that Chatham's and Padilla's discrimination claims served as a catalyst for the
Attorney General's favorable opinion. First, and most importantly, no evidence has been produced
that demonstrates that the Attorney General was aware of their discrimination charges. Second,
although the record indicates that Chatham did file a claim with the Texas Commission on Human
Rights, she did so ten months after Cornyn issued his opinion. Furthermore, there is no evidence in
the record that Padilla ever filed a claim with the Texas Commission on Human Rights. Finally,
although the Attorney General did agree that employees who received any bonus should receive the
entire bonus, he ruled against appellants' fundamental position that every affected employee must
receive the bonus retirement credits. Therefore, because of the dearth of supporting evidence for
appellants' theory, and because of the discretion vested in the trial court, we overrule appellants'
third issue.


Exclusion of evidence

 Appellants' final issue asserts that the district court erred by sustaining the Workforce
Commission's and Retirement System's objections to certain summary-judgment evidence and in
excluding the evidence. We assume that appellants are arguing that, because the evidence was
excluded, the summary judgment was improper. Admission or exclusion of evidence is within the
discretion of the trial court. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). 
Reversing a summary judgment based on an evidentiary error requires appellant to show that there
was indeed an evidentiary error and that the error probably resulted in an improper judgment. Id.;
GT & MC, Inc. v. Texas City Refining, Inc., 822 S.W.2d 252, 257 (Tex. App.--Houston [1st Dist.]
1991, writ denied). To successfully challenge an evidentiary ruling, the complaining party must
show that the judgment turns on the particular piece of evidence that was excluded or admitted. 
Alvarado, 897 S.W.2d at 753-54. We determine whether a party has met this burden by reviewing
the entire record. Id. at 754.

 Thus, it is appellants' burden to indicate to which issue each particular piece of
excluded evidence pertains and whether the judgment on that issue turned on the excluded evidence. 
Here, there were multiple issues in the suit, several plaintiffs, and two defendants. However,
appellants only assert that evidentiary errors exist. They make no attempt to connect any individual
piece of excluded evidence to any particular issue or to argue that the judgment of the trial court
turned on the excluded evidence. Therefore, without deciding whether evidentiary error exists, we
hold that appellants have failed to carry his burden necessary for us to find reversible error in the trial
court's evidentiary rulings. Appellants' fourth issue is overruled.


CONCLUSION

 We hold that neither the Workforce Commission nor the Retirement System
committed age discrimination with regard to the terminations stemming from the reduction in force
and the implementation of an age and service credit that permitted some of the terminated employees
to become eligible for retirement. We further hold that the Retirement System did not misinterpret
former government code section 814.1041(b). Finally, we hold that neither the trial court's denial
of attorney's fees nor the exclusion of evidence was an abuse of discretion. We thus affirm the
summary judgment dismissing the claims against the Workforce Commission and the Retirement
System in all respects.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: January 8, 2004
1. In its brief the Workforce Commission asserted that a prima facie case of age
discrimination is established if a complainant shows that he (1) was a member of a protected class,
(2) was discharged, (3) was qualified for the position from which he or she was discharged, and (4)
was replaced by someone younger. See Russo v. Smith Int'l, Inc., 93 S.W.3d 428, 435 (Tex.
App.--Houston [14th Dist.] 2002, pet. denied). Although the elements outlined in Russo are not
substantially different from those of City of Austin Police Dep't v. Brown, 96 S.W.3d 588, 596 (Tex.
App.--Austin 2002, no pet.), we will follow the precedent of this Court.
2. The Workforce Commission actually claimed that no evidence exists to demonstrate that
any of the complainants were replaced by someone younger--the fourth element of a prima facie
case of age discrimination established in Russo. Russo, 93 S.W.3d at 435. We find that the third
element of a prima facie case of age discrimination outlined in City of Austin Police Dep't is
substantially similar to the fourth element in Russo. Compare id. with City of Austin Police Dep't,
96 S.W.3d at 596. In either case, appellants failed to rebut the Workforce Commission's claim that
no evidence exists with regard to an essential element of their claim of age discrimination.
3. This conclusion is based on the fact that the most recent citation in Sharp's report was from
September 1996, and because the report's footnotes reference other bills passed by the 74th
Legislature.
4. Under the section an employee, displaced by the reduction in force, could receive an
additional three years added to the employee's retirement service annuity if that employee was made
eligible for retirement by adding three years to both age and service period. The Retirement System
construed the section to mean that an employee who was already eligible to retire prior to the
reduction in force would not be granted the three-year-service-credit bonus. For a more complete
discussion of this issue see our discussion of the catalyst theory, infra.
5. The so-called "Rule of 80" derives from government code section 814.104, providing that 
a member is eligible to retire and receive a service retirement annuity if the member "has at least 5
years of service credit in the employee class and the sum of the member's age and amount of service
credit in the employee class, including months of age and credit, equals or exceeds the number 80." 
Tex. Gov't Code Ann. § 814.104 (West Supp. 2004).