# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00308-CV

**Francis Ibezim, Appellant**

**v.**

**Texas Department of Health, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. GN101655, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Francis Ibezim sued the Texas Department of Health (the ADepartment@), his employer, under the Texas Human Rights Act, *see* Tex. Lab. Code Ann. '' 21.001-.556 (West 1996 & Supp. 2004), alleging the Department discriminated against him because of his race, national origin, and in retaliation for having filed previous complaints of discrimination with the Texas Commission on Human Rights (the ACommission@). The Department moved for summary judgment, contending that many of Ibezim=s claims were not presented to the Commission in a timely manner, that he did not establish a prima facie case of discrimination or retaliation, and that he did not rebut the Department=s legitimate,

nondiscriminatory reasons for the alleged unlawful employment practices. We hold that these grounds are sufficient to support the trial court=s summary judgment and affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

Ibezim, an African-American of Nigerian descent, began his career with the Department in July 1992 as a volunteer and then moved to a full-time, paid position in August 1992. He is still employed by the Department as a Public Technician III in the nutrition services program.

Since 1995, Ibezim has filed four complaints with the Commission alleging the Department engaged in a series of unlawful employment actions. He filed his first complaint with the Commission on December 4, 1995. In that complaint, he said that he applied for an Accounts Examiner III position in 1994 and again in 1995 and that the Department denied him promotion in each instance because he was African-American. He said the first position went to a white male and the other went to a white female. In his December 1995 complaint, he also alleged in that complaint that in 1994 he was denied the unconditional opportunity to attend a Department conference entitled ACultural Competency and Reforming Healthcare Delivery for Children with Special Health Care Needs.@ He said the Department conditioned his attendance on his agreement to author an article about the conference in *WIC News Magazine*. According to Ibezim, other similarly situated employees were allowed to attend unconditionally. He filed his second complaint with the Commission on September 19, 1996, alleging that he had been denied promotion to one of four different Accounts Examiner III positions because of his national origin. In his third complaint, filed on January 10, 1997 and amended on June 17, 1997, Ibezim charged the Department with retaliating

2

against him for having filed the first two complaints. He filed his last complaint with the Commission on September 18, 2000, alleging he was denied promotion to one of Amore than twenty positions@ within the Department because of his race, national origin, or in retaliation for having filed three other complaints.[1]

He filed suit in district court on May 31, 2001, raising each of the four claims and charging the Department with discriminatory and retaliatory employment practices. *See* Tex. Lab. Code Ann. ' ' 21.051, .055 (West 1996).

The Department answered with a general denial and reserved the right, which it never exercised, to assert the affirmative defense of limitations once discovery was complete. The Department then filed a no-evidence summary judgment motion followed later by a traditional summary judgment motion. Tex. R. Civ. P. 166a(c), (i). In its no-evidence summary judgment motion, the Department alleged that Ibezim failed to make out a prima facie case of discrimination based on race, national origin, or retaliation or to rebut the Department=s legitimate, nondiscriminatory reasons for making the adverse employment decisions. The scope of the Department=s traditional summary judgment motion was more limited and addressed only those allegations appearing in Ibezim=s September 18, 2000 complaint and only

---

[1] There is no indication in the record of what steps, if any, the Department took in response to these complaints. There is a settlement document dated June 17, 1997 for a complaint numbered A1970200-S.@ Because it is dated about nine months after the September 19, 1996 complaint, it appears that the settlement was in response to that complaint. Ibezim=s signature is the only signature that appears on the document.

3

those claims the Department believed were filed with the Commission within the 180-day time limit. *See* Tex. Lab. Code Ann. '' 21.201, .202 (West 1996) (complainant must file complaint with Commission within 180 days of alleged unlawful employment act). The trial court granted summary judgment for the Department without stating the grounds.

Ibezim brings this appeal, arguing that he raised sufficient facts in support of a prima facie case of discrimination and retaliation and that he was not required to present his claims to the Commission within 180 days because his claims fell within the Acontinuing-violation@ exception to the 180-day requirement.

## DISCUSSION

**Standard of Review**

The Department moved for both a traditional and a no-evidence summary judgment. *See* Tex. R. Civ. P. 166a(c), (i). We review the granting of summary judgment *de novo. FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

A party moving for traditional motion for summary judgment bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). A defendant moving for summary judgment need only negate one essential element of each of the plaintiff=s theories to obtain summary judgment. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). The nonmovant has no burden unless the movant has conclusively established its defense as a matter of law. *Willrich*, 28 S.W.3d at 23. If

4

the moving party produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Phan Son Van v. Pena*, 990 S.W.2d 751, 752 (Tex. 1999).

In a no-evidence motion for summary judgment, the movant does not bear the burden of presenting any evidence; rather the nonmovant Abears the burden to produce evidence of probative force to raise a fact issue on the material questions presented.@ *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.CAustin 1998, no pet.). A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Id*. The movant must point out which element of the nonmovant=s claim is missing. *Id*. A no-evidence summary judgment motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact on each ground where the nonmovant bears the burden at trial and that is raised in the summary judgment motion. *Id*. If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id*. Less than a scintilla of evidence exists when the evidence is A>so weak as to do no more than create a mere surmise or suspicion=@ of a fact, and the legal effect is that there is no evidence. *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In reviewing both the traditional and no-evidence motions, the court must resolve all doubts in favor of the nonmovant and consider all the summary judgment evidence in a light most favorable to the nonmovant. *Id*. When the order granting summary judgment does not specify the particular grounds the

5

trial court sustained, on appeal, the summary judgment opponent must defeat each summary judgment ground urged by the movant. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). Otherwise, the appellate court must uphold the summary judgment on any supported ground. *Id*.

**Claims of discrimination**

We begin by addressing Ibezim=s discrimination claims. In his petition, Ibezim alleged that the Department discriminated against him by failing to promote him on three separate occasions because of his race or national origin. Texas law prohibits an employer from discriminating against an employee in the terms or conditions of employment on the basis of race, color, disability, religion, sex, national origin, or age. Tex. Lab. Code Ann. ' 21.051.

In its no-evidence summary judgment motion, the Department contended that all of Ibezim=s evidence was inadmissible because he failed to authenticate his exhibits[2] or otherwise follow the proof requirements set out in Texas Rule of Procedure 166a(c). Even if the evidence were admissible, according to the Department, Ibezim still failed to establish a prima facie case of discrimination based on race or national origin or to rebut the Department=s legitimate, nondiscriminatory reason for taking the unlawful

---

[2] The exhibits included the unsigned settlement agreement, copies of memoranda Ibezim sent to the Department, copies of memoranda the Department sent to him, a copy of his January 10, 1997 complaint to the Commission, a copy of a poster entitled AThe Rules@ seized from his office, copies of the Department=s reimbursement forms, copies of job postings, and the actual evaluation forms used during the interviewing process.

action, namely, that he was unqualified for the positions he sought. The Department also pointed out that Ibezim=s claims were barred because he failed to present them to the Commission in a complaint within 180 days of the alleged unlawful act.

This latter point presents a jurisdictional issue. The labor code requires a Aperson claiming to be aggrieved by an unlawful employment practice@ to file a complaint with the Commission Anot later than the 180th day after the date the alleged unlawful employment practice occurred.@ *Id*. '' 21.201, .202. This requirement is jurisdictional. *Specialty Retailers v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996). Ibezim filed two separate complaints with the Commission, the first dated December 4, 1995 and the second dated September 19, 1996, alleging the Department discriminated against him based on race or national origin. The events giving rise to his December 4, 1995 complaint were the denial of his applications for promotion to one of two Accounts Examiner III positions and the denial of the opportunity to attend a work-related conference unconditionally. The first application for promotion and denial occurred sometime in 1994. The second occurred in March 1995. Because both occurred more than 180 days prior to his December 1995 filing, the trial court was without jurisdiction to review them. *See id*., 933 S.W.2d at 492. Accordingly, we overrule Ibezim=s issue as to the December 4, 1995 complaint.

We now turn to Ibezim=s September 19, 1996 complaint. In that complaint, Ibezim said he attempted to gain promotion to one of four Accounts Examiner III positions but was denied promotion to one of those positions in June 1996. Ibezim thus filed his complaint within 180 days of the alleged unlawful action. We must therefore determine whether he presented more than a scintilla of evidence to support his claim thus defeating the summary judgment motion.

7

Chapter 21 of the labor code is modeled on the federal Civil Rights Act of 1964, as amended in 1991, *see* Tex. Lab. Code Ann. ' 21.001 (West 1996); therefore, Texas courts follow federal statutes and cases in applying chapter 21. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). A plaintiff who sues an employer under either the federal or Texas statutes may raise either a Adisparate treatment@ or a Adisparate impact@ claim and prove discrimination by different methods. *See City of Austin Police Dep=t v. Brown*, 96 S.W.3d 588, 595 (Tex. App.CAustin 2002, pet. dism=d). A disparate treatment claim is the most easily understood type of discrimination claim. *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). The claim is that the employer treats some people less favorably than others because of their race or national origin. *See id.*; *Brown*, 96 S.W.3d at 595. A disparate impact claim arises when a facially neutral practice has a disproportionate impact on a protected group. *Brown*, 96 S.W.3d at 595. While a disparate treatment claim focuses on discriminatory intent, a disparate impact claim focuses on discriminatory results; that is, the employer=s motive or intent to discriminate is irrelevant. *Teamsters*, 431 U.S. at 335 n.15. Because Ibezim claims to have been treated differently than others similarly situated, his is a disparate treatment claim.

Claims are also classified by the type of proof involved. *See Brown*, 96 S.W.3d at 595. In a Apretext@ case, the plaintiff=s ultimate goal is to show, by indirect or inferential proof, that the employer=s stated reason for its adverse action against the employee was a pretext for discrimination. *Id*. In a Amixed-motive@ case, the plaintiff can show an employer=s discriminatory animus by direct evidence. *Id*. Once shown, the employer must then prove that it would have made the same decision for legitimate

8

reasons even without the discriminatory motive. *Id*. How a case is classified depends upon whether there is direct evidence of unlawful discrimination or animus toward a protected group. *Id*.

Direct evidence of discriminatory intent is rare. *See Thornbrough v. Columbus & G. R. Co.*, 760 F.2d 633, 638 (5th Cir. 1985) (AEmployers are rarely so cooperative as to include a notation in the personnel file, >fired due to age,= or to inform a dismissed employee candidly that he is too old for the job.@). Ibezim has not presented any direct evidence of discriminatory intent; consequently, this is a pretext case. We therefore review the evidence in a light most favorable to Ibezim for indirect, circumstantial proof of discrimination.

Initially, the burden of proof was Ibezim=s to establish a prima facie case of employment discrimination. He had to show that (1) he was a member of a protected class; (2) he sought and was qualified for an available employment position; (3) despite his qualifications, he was not selected for the position; and (4) the Department selected someone not in his protected class or selected no one but instead continued to seek applicants with Ibezim=s qualifications. *See McDonald Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.CFort Worth 2000, pet. denied) (citing *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999)). The burden of establishing a prima facie case of disparate treatment is not onerous. *See Texas Dep=t of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A plaintiff must prove by a preponderance of the evidence that he applied for an available position for which he was qualified but was rejected under circumstances that give rise to an inference of unlawful discrimination. *Id*. The prima facie case Araises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based

on the consideration of impermissible factors.@ *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). The central inquiry is whether the circumstantial evidence presented is sufficient to create an inference that the basis for the employment decision was illegal. *Byrd v. Roadway Express*, 687 F.2d 85, 87 (5th Cir. 1982).

Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. *See Furnco*, 438 U.S. at 577; *Brown*, 96 S.W.3d at 596. If the employer does so, the burden shifts back to the plaintiff to prove that the employer=s articulated reasons were untrue and were given as a mere pretext for unlawful discrimination. *Brown*, 96 S.W.3d at 596; *Elgaghil*, 45 S.W.3d at 139. It is not sufficient merely to show the employer=s proffered reasons are false or not credible; the plaintiff must also show the unfair treatment was motivated by intent to discriminate on the basis of race or national origin. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). In some cases, however, Aa plaintiff=s prima facie case, combined with sufficient evidence to find that the employer=s asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.@ *Id*. at 148. An employer is entitled to judgment as a matter of law where the record conclusively shows some other, nondiscriminatory reason for its action, or where the plaintiff Acreated only a weak issue of fact as to whether the employer=s reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.@ *Id*.

As the nonmovant in a no-evidence summary judgment, Ibezim was required to present more than a scintilla of evidence that he belonged to a protected class, sought and was qualified for the

available employment position, was not selected for the position despite his qualifications because of his race or national origin, and the Department selected someone else outside his protected class. *See McDonald Douglas*, 411 U.S. at 802; *Elgaghil*, 45 S.W.3d at 139. Ibezim failed to present any evidence of his qualifications for any of the Accounts Examiner III positions or to compare his qualifications with those of the people actually awarded the positions. *See Burdine*, 450 U.S. at 216 (plaintiff has to show qualifications). He simply stated that the positions were given to non-African-Americans or non-Nigerians. While his initial burden was not onerous, *id*. at 253, he had to introduce some evidence of his qualifications to make out a prima facie case of discrimination. *See St. Mary=s Honor Ctr. v. Hicks*, 509 U.S. 502, 510 n.3 (1993); *Rhodes v. Guiberson Oil Tools*, 39 F.3d 537, 543 (5th Cir. 1994); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1318 (4th Cir. 1993). He failed to do so.

Furthermore, he failed to show causation; namely, that his race Aactually played a role in [the employer=s decisionmaking] process and had a determinative influence on the outcome.@ *Reeves*, 530 U.S. at 141; *see also Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984) (noting that to prove causal link, plaintiff must show Abut for@ causation). In sum, Ibezim failed to raise more than a scintilla of evidence establishing a prima facie case of discrimination or that his race or national origin were the Abut for@ cause for not awarding him the positions; therefore, as to the September 19, 1996 complaint, the no-evidence summary judgment was proper.

**Claim of retaliation**

We now turn to Ibezim=s claim of retaliation. According to Ibezim=s petition, he filed a complaint with the Commission on January 10, 1997 claiming that he suffered a series of discriminatory acts

in retaliation for the complaints he lodged against the Department in 1995 and 1996. Ibezim filed another complaint on June 17, 1999, alleging that a co-worker heard secondhand from another coworker that someone had complained about Ibezim=s Asexist behavior.@[3] The Department moved for a no-evidence summary judgment stating that Ibezim could not make out a prima facie case of discrimination or, in the alternative, could not rebut the Department=s legitimate, nondiscriminatory reason for its employment decisions. We conclude that Ibezim failed to present more than a scintilla of evidence that the Department=s acts were unlawful, or that the Department=s acts were connected to or resulted from his previous complaints.

Section 21.055 of the labor code provides that an employer commits an unlawful employment practice if the employer retaliates or discriminates against a person who, under chapter 21: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding or hearing. Tex. Lab. Code Ann. ' 21.055. In order to establish a prima facie case of retaliation, an employee must prove that (1) he engaged in a protected activity; (2) his employer took some unlawful employment action against him; and (3) the employer=s unlawful employment action was due to the employee=s engagement in the protected activity. *Mayberry v. Texas Dep=t of Agric.*, 948 S.W.2d 312, 315 (Tex. App.CAustin 1997, pet. denied). The types of employment acts prohibited under the second elementCunlawful employment decisionsCare the Aultimate employment decisions,@ namely, those resulting in termination, denial of promotion, or some

___

[3] We will not address the issue because he did not connect the source of the rumor to the Department.

12

specific disciplinary action. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997).  The employer=s act must be Amore disruptive than a mere inconvenience or an alteration of job responsibilities.@ *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (5th Cir. 2000).  Under the third element, the employee must show that the decisionmaker responsible for the discriminatory act knew of the employee=s previous complaints and was  motivated by the making of those complaints.  *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994).

In response to the no-evidence summary-judgment motion, Ibezim pointed to several Aadverse@ employment decisions as proof of the Department=s retaliatory motive.  He alleged that his supervisor reassigned his primary duties to a coworker, transferred work away from him and to another coworker, assigned a less-qualified coworker to edit his reports, and refused to give him clear work instructions.  First, Ibezim failed to present any evidence that the supervisor making these decisions knew about his previous complaints and made these decisions because of his previous filings.  *See  Marsaglia v. University of Tex.*, 22 S.W.3d 1, 5 (Tex. App.CEl Paso 1999, pet. denied) (motion for summary judgment granted where employee failed to show that supervisor engaging in retaliatory conduct knew about employee=s previous complaints).  Second, these acts do not constitute unlawful employment practices because they do not rise to the level of Aultimate employment decisions.@ *See Galabya*, 202 F.3d at 640; *Mattern*, 104 F.3d at 707; *see also Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456 (7th Cir. 1994) (semantic change in title and Abruised ego@ did not constitute unlawful employment decision where pay and benefits remained same); *Crady v. Liberty Nat=l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) (noting that unlawful employment decisions are those that have Aa materially adverse@ effect Ain the terms

13

and conditions of employment@ and limiting materially adverse changes to those that result in termination, demotion evidenced by decrease in wage or salary, less distinguished title, material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to particular situation); *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (noting that reassignments without salary or work hour changes do not constitute adverse employment decisions). We therefore overrule Ibezim=s issues regarding his retaliation causes of action. Ibezim also alleged that the Department had failed to conduct an Aofficial evaluation@ during his tenure and that the Department conducted an unauthorized search of his workplace.

**Mixed claim of discrimination and retaliation**

In his petition, Ibezim said he applied for, interviewed for, and was denied promotion to Amore than twenty@ different positions between September 1999 and August 2000 on the basis of race, national origin, or in retaliation for having filed the three previous claims. He filed a complaint with the Commission on September 18, 2000, asserting the same allegations. The Department filed a traditional motion for summary judgment as to these claims. The Department again challenged the timeliness of some of Ibezim=s claims. According to the Department, Ibezim presented only fourteen of the Amore than twenty@ claims to the Commission in a timely manner and as to those fourteen, failed to rebut the Department=s legitimate, nondiscriminatory reason for denying him those promotions. In response to the Department=s summary judgment motion, Ibezim acknowledged that some of his claims were not presented to the Commission in a timely manner but were still timely under an exception allowing for untimely claims where some of a series of continuing violations fall outside the 180-day time period.

The "continuing-violation" doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 31 (Tex. App.—Austin 1998, pet. denied). In *Davis*, we held that in some instances "equitable considerations may require that the filing period not begin until acts supportive of a civil rights action are, or should be, apparent to a reasonably prudent person in the same or a similar position." *Id.* We went on to say that "[t]he focus is on what event should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Id.*; *see also Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) (holding that touchstone in determining whether one act is part of continuing violation is whether employee was put on notice that his rights had been violated).

The Supreme Court's most recent pronouncement on the continuing-violation doctrine speaks directly to Ibezim's situation. In *National Railroad Passenger Corp. v. Morgan*, the Court held that acts such as "termination, failure to promote, denial of transfer or refusal to hire are easy to identify" and are discrete acts not subject to the continuing-violation doctrine absent rare equitable considerations. 536 U.S. 101, 113 (2002). The Department's denials of promotion should have put Ibezim on sufficient notice that his rights may have been violated requiring him to present his claims of discrimination to the Commission within 180 days of those denials. Given Ibezim's contentious history with the Department, it is difficult to imagine that he did not suspect that some discriminatory animus was at the heart of the Department's decisions, and given his experience with the complaint process, we hold that there are no equitable considerations favoring tolling Ibezim's claims. *See Hand v. Stevens Transp., Inc.*, 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.) (noting that doctrine is to be used "sparingly" and only in instances where

15

ignorance of limitations period is excusable).  Consequently, we agree with the Department that as a matter of law only fourteen of the more than twenty claims of alleged unlawful conduct were timely brought before the Commission and that the remainder were barred.

We now turn to the question of whether the Department presented a legitimate, nondiscriminatory reason for denying the remainder of Ibezim=s applications for promotion and whether Ibezim showed the Department=s stated reasons were not legitimate but pretextual.  In reviewing Ibezim=s discrimination and retaliation claims, we employ the same burden-shifting analysis for both.  *See Jones v. Jefferson County*, 15 S.W.3d 206, 210 (Tex. App.CSan Antonio 2000, pet. denied).  The Department=s burden at this stage was only that of going forward, of adducing evidence; the burden of persuasion remained with Ibezim.  *See Burdine*, 450 U.S. at 253.  In order to meet its burden, the Department had to Aclearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff=s rejection.@ *Id*. at 255.  Although the burden was light, the Department must have articulated its nondiscriminatory reason for the challenged action with some specificity in order to afford Ibezim a Afull and fair opportunity to demonstrate pretext.@ *Id*. at 255-56.

The Department offered Ibezim=s deposition testimony, in which he acknowledged not meeting the Department=s criteria for the jobs. And the Department presented evidence that Ibezim was not qualified for any of the positions he applied for.  The Department presented the job posting, which outlined the requirements for each position, and Ibezim=s interview test scores and answers to questions and compared those scores and answers with those of the people to whom the positions were eventually offered.

Ibezim acknowledged that he scored lower than the other candidates. His argument was that the scoring was random and arbitrary and that if the Department had measured the Awhole person,@ he would have actually scored above the other candidates. Ibezim asserted that the interview scoring was unfair because of its subjective nature. Use of subjective hiring criteria is not discriminatory per se. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th Cir. 2003). Ibezim had to prove that the Department=s use of subjective criteria was a mask for discrimination. *Id*. (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002)). This he failed to do. Because our review of the record reveals that Ibezim failed to present any evidence that the Department=s legitimate, nondiscriminatory reasons for denying him promotion were simply a pretexts for discrimination and because he failed to timely present some of his claims to the Commission, we overrule Ibezim=s issues as to these discrimination and retaliations claims.

**CONCLUSION**

On the whole, Ibezim=s claims were without merit. He failed to timely present some of his claims to the Commission, thus depriving the trial court of jurisdiction to consider those claims. Furthermore, he failed to present evidence sufficient, in one instance, to establish a prima facie case and, in another, to rebut the Department=s legitimate, nondiscriminatory reasons for denying him the promotions he sought. He also failed to show he suffered any Aadverse employment decisions@ in retaliation for having previously filed employment discrimination complaints. We therefore overrule his issues on appeal and affirm the trial court=s summary judgment.

17

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   July 15, 2004