NUMBER 13-03-338-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


AUTOZONE, INC., Appellant,


v.
 


SALVADOR REYES, Appellee.

 


On appeal from the 197th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Justices Hinojosa, Yañez, and Garza 


Memorandum Opinion by Justice Garza



 Appellee, Salvador Reyes, sued his former employer, AutoZone, Inc., for age
discrimination after his employment was terminated. Tex. Lab. Code Ann. § 21.051
(Vernon 2006). According to AutoZone, Reyes was discharged for violating the company's
sexual harassment policy. A jury found in favor of Reyes and awarded him $61,440 in
back pay, $211,800 in compensatory damages, and $1,500,000 in exemplary damages. 
The trial court found the award of $1,773,240 in damages awarded by the jury exceeded
the statutory limits imposed by law, found that Reyes was not entitled to front pay, and
reduced the award to $300,000 in damages, $39,615 in attorney's fees and costs in the
amount of $2,966.76. The judgment of the trial court is modified to reduce the award of
back pay and to delete the award of punitive damages. Otherwise the judgment is affirmed
as modified. 

Background


 Reyes was employed by AutoZone in January of 1984. Reyes began his
employment as a counter person and worked his way up to parts service manager. In
March of 2000, AutoZone employee Irma Knowles filed sexual harassment complaints
against Reyes and another employee, Jim Alvarado. The investigation of both complaints
resulted in the discharge of Reyes and the transfer of Alvarado. Reyes conceded that he
would greet Knowles and other male and female co-workers with a "beso y abrazo" (kiss
and hug) as is customary in South Texas, but denied sexually harassing her. Reyes was
62 years old at the time of the discharge.

I. Legal Sufficiency


 In its first issue, AutoZone argues that the evidence is legally insufficient to support
the jury's finding that Reyes' age was a motivating factor in its decision to discharge him. 
AutoZone maintains that Reyes was discharged because he admitted to violating the
company's sexual harassment policy.



Standard of Review


 In conducting a legal sufficiency review, we "view the evidence in the light most
favorable to the verdict, crediting favorable evidence if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not." City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Ysleta Indep. Sch. Dist. v. Monarrez, 177
S.W.3d 915, 917 (Tex. 2005); Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739
(Tex. 2003). A no-evidence challenge fails if more than a scintilla of evidence supports the
challenged finding. City of Keller, 168 S.W.3d at 810; Canchola, 121 S.W.3d at 739. More
than a scintilla of evidence exists if the evidence rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. Ford Motor Co. v.
Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (citing Merrell Dow Pharm., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997)). Evidence that creates a mere surmise or suspicion of the
existence of a vital fact is not legally sufficient. Id. (citing Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983)). A no-evidence point must be sustained only when the record
presents one of the following situations: (1) a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than
a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. 
City of Keller, 168 S.W.3d at 810 (citations omitted).

 We emphasize that jurors are the sole judges of the credibility of the witnesses and
the weight to be given their testimony. Id. at 819. When there is conflicting evidence, it
is the province of the jury to resolve such conflicts. Id. at 820. If conflicting inferences can
be drawn from the evidence, we assume jurors made all inferences in favor of their verdict
if reasonable minds could, and disregard all other inferences. Id. at 821. But if the
evidence allows only one inference, we may not disregard it. See id. Thus, so long as the
evidence falls within a zone of reasonable disagreement, we cannot substitute our
judgment for that of the trier-of-fact. Id. at 822. 

Applicable Law


 Section 21.051 of the Texas Labor Code, a provision of the Texas Commission on
Human Rights Act (TCHRA), prohibits an employer from discharging or in any other way
discriminating against an employee because of the employee's age. See Tex. Lab. Code
Ann. § 21.051. (1) In discrimination cases that have not been fully tried on the merits, Texas
courts apply the burden-shifting analysis established by the United States Supreme Court. 
See Canchola, 121 S.W.3d at 739 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530
U.S. 133, 142-43 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Tex.
Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp.
v. Green, 411 U.S. 792, 802-03 (1973); M.D. Anderson Hosp. v. Willrich, 28 S.W.3d 22,
24 (Tex. 2000)). Under this burden-shifting analysis, the plaintiff has the initial burden of
proving a prima facie case of discrimination by a preponderance of the evidence. Stanley
Stores Inc. v. Chavana, 909 S.W.2d 554, 559 (Tex. App.-Corpus Christi 1995, writ
denied). (2) Discrimination can by proven by direct or circumstantial evidence. Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001); Garcia v. Allen, 28 S.W.3d
587, 600 (Tex. App.-Corpus Christi 2000, pet. denied). 

 However, when, as here, a discrimination case has been fully tried on its merits a
reviewing court does not engage in a burden-shifting analysis. See Wal-Mart Stores, Inc.,
v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003) (citing Rubinstein v. Adm'rs of the Tulane
Educ. Fund, 218 F.3d 392, 402 (5th Cir. 2000); City of Austin Police Dep't v. Brown, 96
S.W.3d 588, 599 n.4 (Tex. App.-Austin 2002, pet. dism'd); see also Travis v. Board of
Regents of Univ. of Texas, 122 F.3d 259, 263 (5th Cir. 1997). (3) Instead, the evaluation
process is streamlined and we proceed directly to whether the plaintiff submitted legally
sufficient evidence to support the jury's ultimate finding. Wal-Mart Stores, Inc., 121 S.W.3d
at 739 (citing Rutherford v. Harris County, Texas, 197 F.3d 173, 180-81 (5th Cir. 1999)
(stating "We need not parse the evidence into discrete segments corresponding to a prima
facie, an articulation of a legitimate, nondiscriminatory reason for the employer's decision,
and a showing of pretext.")); see also City of Austin Police Dep't., 96 S.W.3d at 596 (stating
"an affirmative finding will be reviewed on appeal on the basis of whether the plaintiff
produced sufficient evidence for the jury to find discrimination had occurred."). At trial, it
was Reyes' burden to prove that age was a motivating factor in AutoZone's decision to
discriminate against or discharge him. See Canchola, 121 S.W.3d at 739; Quantum Chem.
Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex. 2001) (stating that a motivating factor is the
standard of causation regardless of how many factors influenced the employment decision); 
see also Rutherford, 197 F.3d at 180-81. 

 Thus, in discussing AutoZone's first issue, we inquire whether the evidence is legally
sufficient to support the jury's finding that age was a motivating factor in AutoZone's
decision to discriminate against or discharge Reyes. Wal-Mart Stores, Inc., 121 S.W.3d at
739.

Analysis 


 Reyes gave the following testimony as his reasons for believing that he was
discharged because of his age. Co-workers, Alvarado and Guadalupe Garcia made
comments such as "you are getting too old" and "you need to be faster." Reyes felt
pressured because of his inability to stay up to date with the increasingly difficult computer
programs. Alvarado told Reyes that Jesse Villarreal, a manager at AutoZone, stated that
Reyes had been discharged due to his age. AutoZone gave preferential treatment to
younger employees by not firing them after similar complaints were lodged against them. 
For instance, Alvarado, who was younger than Reyes, was not discharged as a result of
Knowles' sexual harassment complaint, simply because Alvarado denied harassing
Knowles. Additionally, three employees, a female in her twenties (Anne Beaty), a male in
his twenties (Alex Parga), and a male in his thirties (John Parrack), who were discharged
due to violations of AutoZone's sexual harassment policy were made eligible for rehire with
"provision" or "with reservation" while Reyes was not. In addition, a forty-year-old San
Antonio employee (Elroy Harrison), who was discharged for violating AutoZone's sexual
harassment policy, was first given a reprimand for the "same type of behavior," then upon
the employee's continued violation, was discharged. 

 Jim Alvarado, a manager at the store for a period of two to three months, testified
that Villarreal told him that Reyes, the oldest employee at the store, had been terminated
because of his age. After learning Reyes had been terminated, Alvarado approached
Villarreal to turn in his keys and told Villarreal that he preferred quitting to being fired for
sexual harassment. Villarreal responded by stating "whoever needs to be punished has
been punished. AutoZone is just trying to get rid of the old people." Alvarado explained
that Villarreal elaborated that the "old ones" have a certain way of working and that
AutoZone was trying to make changes. Alvarado also testified that although Knowles had
launched a sexual harassment complaint against him, he was not terminated. 

 Regarding AutoZone's sexual harassment training, Alvarado testified it was not
sexual harassment when a male and a female employee greeted each other with a hug or
handshake and that it was not against policy to greet each other with a hug or peck on the
cheek unless it was clear that it was unwelcome. He testified that everyone at the store
greeted each other in one of these manners, even management, and that Knowles always
seemed to welcome the contact with Reyes and would at times initiate contact herself. 

 On cross-examination, Alvarado testified that he understood Villarreal's comment-
"AutoZone is just trying to get rid of the old people"- to mean that AutoZone was getting rid
of all the old people that had been with the company for a long time. Alvarado also
informed the jury that according to AutoZone policy, an employee who files a false sexual
harassment claim will be disciplined or terminated. Although Knowles falsely accused him
of sexual harassment, no action was taken against her. Instead, Knowles' request to
transfer to another store was granted, a transfer that had previously been denied. 

 Jesse Villarreal, who was one of Reyes' managers at AutoZone, testified that when
he commented to Alvarado that AutoZone was getting rid of old people, he meant "old
management" and that management changes were needed because some managers were
"too lax" and "had a tendency to bend the rules." In support of his contention, Villarreal
mentioned two AutoZone managers who were terminated for policy violations, both of whom
were in their early to mid-30s and had been managers for thirteen or fourteen years.

 Guadalupe Garcia, an AutoZone sales person, testified that he was the one who
reported Knowles' sexual harassment concerns to assistant manager Edmundo Morales. 
Garcia testified that on March 10, Knowles told him that she was upset with Alvarado
because he did not let her leave work early that day even though her babysitter had quit.
Alvarado did not allow Knowles to leave because the store would be understaffed. Garcia
then commented to Knowles that he had seen Reyes lean toward her and asked her how
she felt about it. Knowles responded that she felt uncomfortable, but that she did not
characterize it as sexual harassment. Garcia also testified that he had never seen Reyes
hug, kiss, or sexually harass anyone. He acknowledged that although Knowles initially told
him that Reyes had kissed her, she testified at trial that Reyes did not kiss her. Garcia
further testified that it is not uncommon for him to greet his ex-wife, also an AutoZone
employee, with a "peck" on the cheek when he visits the store where she is employed. He
testified that no one ever informed him that greeting each other with a kiss or "peck"
constitutes sexual harassment. 

 Ken Knecht, AutoZone's Regional Loss Prevention Manager, testified that he
interviewed and obtained statements from Knowles, Alvarado, Reyes, Garcia, and Julia
Araujo. Knecht submitted the statements to Melody Jones Deener, an AutoZone Relations
Specialist located at AutoZone's corporate headquarters in Tennessee. Deener and Rene
Munoz, an AutoZone Regional Manager, both testified that they recommended Reyes'
discharge because Reyes acknowledged that he had engaged in conduct which violated
AutoZone's sexual harassment policy. Deener further testified that an employee who is
terminated for sexual harassment is not eligible for rehire. 

 We conclude that Alvarado's testimony, that Villarreal stated that AutoZone
terminated Reyes due to his age, is direct evidence that age was a motivating factor in
AutoZone's decision to discharge Reyes. See Garcia v. Allen, 28 S.W.3d 587, 600 (Tex.
App.-Corpus Christi 2000, pet. denied) (stating that direct evidence may demonstrate that
the given reason for the discharge was false). AutoZone argues, as it did at trial, that
Villarreal's reference to "old people" refers to the time or experience as a manager and not
to age. However, even assuming such reference could have carried that connotation; the
statements themselves do not reveal such an alternative meaning, and the jury clearly
found otherwise. See City of Austin Police Dep't v. Brown, 96 S.W.3d 588, 596 (Tex.
App.-Austin 2002, pet. dism'd) (concluding that the statements "We need to move some
of these older officers out and give these younger guys a chance at these jobs," "We want
to get you old guys out of there and get some young guys in," and "We're trying to get rid
of you old guys," are direct evidence of age as a motivating factor despite appellant's claim
that the comments referred to "time" or "experience" as opposed to age); see also
Celanese Ltd. v. Skarbanek, 2005 Tex. App. LEXIS 8875 at *8 (Tex. App.-Corpus Christi
2005, no pet.) (finding legally sufficient evidence of wrongful termination where employee
testified that a nurse employed by appellant informed him that part of the reason for his
termination was the fact that he filed a workers' compensation claim despite nurse denying
making such statement at trial). We remain mindful that it is the province of the jury to
resolve conflicts in evidence, to draw whatever inferences it may from conflicting inferences,
and to judge the credibility of the witnesses. See City of Keller, 168 S.W.3d at 819-21. 

 We further conclude that Reyes' evidence that younger employees who also violated
the sexual harassment policy either were not fired or were made eligible for rehire with
"provision" or "reservations" is some evidence that AutoZone discriminated against Reyes
due to his age. See Ysleta Indep. Sch. Dist. v. Monarrez, 177 S.W.3d 915, 917 (Tex. 2005)
(providing "[t]o prove discrimination based on disparate discipline, the disciplined and
undisciplined employees' misconduct must be of 'comparable seriousness.' Although
'precise equivalence in culpability between employees is not the ultimate question,' to prove
discrimination, the plaintiff must usually show 'that the misconduct for which [he] was
discharged was nearly identical to that engaged in by [other] employee[s] whom [AutoZone]
[retained or treated differently].'"). Here, the employees that were treated differently all
violated AutoZone's sexual harassment policy, however, they were treated more favorably
than Reyes. Thus, by not retaining or making Reyes eligible for rehire, AutoZone
discriminated against him in connection with a term, condition, or privilege of employment. 
See Tex. Lab. Code Ann. § 21.051. 

 We agree AutoZone presented evidence that it had a legitimate, non-discriminatory
motive for terminating Reyes, namely the admitted violation of the sexual harassment
policy. However, Reyes testified that he never thought his "friendly" manner of greeting
Knowles was a violation of the sexual harassment policy. The jury was the sole evaluator
of the witnesses' credibility and entitled to resolve conflicts in the testimony as it saw fit. Id. 
Viewing the evidence presented in the record in the light most favorable to the verdict and
disregarding all contrary evidence that a reasonable jury could have disbelieved, we
conclude that the evidence was legally sufficient to support the jury's finding that Reyes' age
was a motivating factor in AutoZone's decision to terminate him. See id.; Canchola, 121
S.W.3d at 739; Quantum Chem. Corp., 47 S.W.3d at 480. AutoZone's first issue is
overruled. 

II. Jury Question Number One


 By its second issue, AutoZone contends the court committed harmful error when it
allowed the jury to find liability against AutoZone for either discriminating against or
discharging Reyes in the same question because the question improperly commingled valid
and invalid liability grounds. Harris County v. Smith, 96 S.W.3d 230 (Tex. 2002); Crown Life
Ins. Co. v. Casteel, 22 S.W.3d 378 (Tex. 2000).

 Question number one of the court's charge asked: "Was age a motivating factor
in AutoZone's decision to discriminate against or discharge Plaintiff Reyes?" The jury
answered "yes."

 AutoZone complains that the pleadings and the evidence at trial do not support the
alternative theory of recovery that Reyes was discriminated against as a result of his age. 
AutoZone maintains that the case was only about whether age was a motivating factor in
its decision to discharge Reyes.

In the court's charge conference, AutoZone objected as follows:

 MR. HUGHES: Now, in connection with Question No. 1, of course, we
object that there is no evidence of any unlawful discrimination
evidence that age was a motivating factor in the decision to terminate. 


 Second, we object to the inclusion of the phrase "or discriminate." In
Question No. 1 there is no pleading or any - - and there is no evidence
of any unlawful activity other than terminating Mr. Reyes from his
employment. That's the only form of discrimination showed [sic] by the
evidence. We ask that it be stricken for that reason. 


 Also, that there is no instruction exactly defining it for the, that's it [sic]
vague, and allows the jury to wonder about and determine what kind
of discrimination he might have suffered other than losing his job. And
because there is no pleading in evidence and it shouldn't be in there,
we also have the problem that if the jury answers the question yes, we
won't know whether they found it because they terminated him or on
the basis of some form of discrimination. 


AutoZone then tendered its Request No. 4, a proposed instruction. The trial court denied
the requested instruction.

 As discussed in the legal sufficiency analysis above, Reyes plead and presented
evidence that he was also discriminated against and the jury was asked to consider
evidence that he was treated differently than younger employees that violated the sexual
harassment policy. Accordingly, the jury could have properly based its decision on the
evidence of discharge or discrimination or both. Because both grounds were supported by
evidence and were properly submitted there was no improper commingling of valid and
invalid liability grounds. 

 AutoZone also complains that inclusion of the term "discriminate against," without
more, allowed the jury to find liability based on a ground that was not properly limited or
legally defined. In this regard, AutoZone argues that §21.051 of the Texas Labor Code
permits liability for discrimination "in connection with compensation or the terms, conditions,
or privileges of employment." Tex. Labor Code Ann. §21.051. At trial, AutoZone objected
on the grounds that the charge failed to include an "instruction exactly defining it."

 AutoZone concedes in its post submission brief that Texas Rule of Civil Procedure
278 sets out error preservation for objecting to a charge. If one complains about a definition
or instruction, the complaining party must submit a draft instruction in writing and get a
ruling. Appellant's Post Submission Brief p.8. Here, AutoZone's proposed instruction did
not contain a definition for "discriminate against." Failure to submit a definition or instruction
shall not be deemed a ground for reversal of the judgment unless a substantially correct
definition or instruction has been requested in writing and tendered by the party complaining
of the judgment." Tex. R. Civ. P. 278. To preserve error, the complaining party must tender
a written request to the trial court for submission of the instruction, which is in substantially
correct wording. Gerdes v. Kannamer, 155 S.W.3d 523, 534 (Tex. App.-Corpus Christi
2004, pet. denied). A ruling is also required to preserve error. Sears, Roebuck & Co. v.
Abell, 157 S.W.3d 886, 892 (Tex. App.-El Paso 2005, pet. denied). Accordingly, AutoZone
failed to preserve error. Appellant's second issue is overruled.

III. Back Pay


 By its third issue, AutoZone argues that there is no evidence supporting the jury's
award of $61,440 in back pay. AutoZone contends the evidence is insufficient to support
the back pay award because the jury failed to offset the back pay by the amount of Reyes'
unemployment compensation and interim earnings. 

 AutoZone provides that Reyes would have earned $53,376 if he had been employed
at AutoZone from the time of his discharge (April 2000) until the date of the jury's verdict
(December 2002). However, during this period, Reyes earned $32,323 from unemployment
and other employment. AutoZone contends the jury failed to offset the finding for back pay
with Reyes' interim earnings and unemployment compensation. As such, AutoZone
contends Reyes only established a maximum back pay loss in the amount of $21,053. 

 In awarding back pay, the court must deduct any interim earnings, workers'
compensation benefits, and unemployment compensation benefits. Tex. Lab. Code Ann.
§21.258(c) (Vernon 2006); Stanley Stores, Inc. v. Chavana, 909 S.W.2d 554, 563 (Tex.
App.-Corpus Christi 1995, writ denied). The jury was instructed that "back pay" is that
amount of wages and employment benefits that Reyes would have earned if he had not
been subjected to his employer's unlawful conduct, less any wages, unemployment
compensation benefits, or workers' compensation benefits he received in the interim. 
Reyes concedes that the evidence showed that his wages from the date of discharge to the
date of the jury's verdict would have been "approximately $53,000." However, he claims
the evidence demonstrated he "also had the opportunity to work overtime." Thus,
"[o]vertime pay would have substantially increased the amount that Reyes would have
received from AutoZone." In addition, Reyes claims he had various fringe benefits such as
medical insurance, the option to purchase company stock, and vacation and sick leave that
the jury could have considered in reaching an award. He contends, without citing to
authority, that although the value of these benefits is not expressly stated in the record "the
jury certainly has the discretion to assign a reasonable figure to these common benefits,
given [his] salary." Reyes testified that he "sometimes" had the opportunity to work overtime
and that he received a raise every year at AutoZone and he explained that the $19,000 per
year he was making at the time of his discharge did not include raises. Further, as it relates
to employment benefits, AutoZone made health insurance available but Reyes had to pay
for it himself. He was entitled to four weeks of paid vacation (at about $365 a week) and
received five days of sick leave a year. AutoZone offered stock options which he would buy
and sell, making money off them. Although AutoZone offered a 401(k) plan, he was not
enrolled in one. 

 Reyes cites to Mayberry v. Texas Dep't of Agriculture, 948 S.W.2d 312, 317 (Tex.
App.-Austin 1997, writ denied), City of Houston v. Harris County Outdoor Adv. Ass'n, 879
S.W.2d 322, 334 (Tex. App.-Houston [14th Dist.] 1994, writ denied), and First State Bank
v. Keilman, 851 S.W.2d 914, 930 (Tex. App.-Austin 1993, writ denied) for the proposition
that a jury has the discretion to award damages within a range of evidence presented at
trial, so long as a rational basis exists for the jury's calculation. While these cases stand
for this proposition, the cases only lend credence to awards which are reasonable based
on a range of damages presented at trial and supported by the evidence. See Mayberry,
948 S.W.2d at 317; City of Houston, 879 S.W.2d at 334; Keilman, 851 S.W.2d at 930. The
evidence in the present case, as the parties concede, supports an award of back pay loss
in the amount of $53,376. However, Reyes' testimony that he sometimes worked overtime,
received a raise every year, was entitled to four weeks paid vacation, and received five days
of sick leave a year, provides a rational basis for the jury to assign a reasonable value to
these benefits in reaching its entire award of $61,440. However, it is apparent that the jury
failed to offset its award with Reyes' interim earnings and unemployment compensation
benefits. Therefore, we conclude the evidence was sufficient to establish that Reyes was
entitled to $61,440 in back pay, less $ 32,323 for interim earnings and compensation
benefits, or $29,117 in back pay. See Tex. Lab. Code Ann. §21.258(c). We sustain this
issue as it relates to offsetting interim earnings and unemployment benefits, and modify the
judgment to reflect a back pay award of $29,117. 

IV. Compensatory Damages


 In its fourth issue, AutoZone argues that the jury's award of $211,840 in
compensatory damages is not supported by the evidence and alternatively argues that the
award should be reduced. 

 Plaintiffs may recover compensatory damages under the Texas Commission on
Human Rights Act (TCHRA). Tex. Lab. Code Ann. § 21.2585(a)(1) (Vernon 2006). 
Compensatory damages include future pecuniary losses, emotional pain, suffering,
inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses,
but may not include back pay, interest on back pay, or other equitable relief authorized
under section 21.258(b). See id. §21.2585(c), (d). 

 Jury question number two asked, "What sum of money, if any, if paid now in cash,
do you find from a preponderance of the evidence would reasonably and adequately
compensate SALVADOR REYES for damages sustained from such conduct?" The jury
was instructed that compensatory damages include future pecuniary losses, emotional pain,
suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary
damages. See id. 

 Specifically, AutoZone focuses on the mental anguish component of the award. 
AutoZone argues that Reyes' evidence fails to rise to the high degree of mental pain and
distress required to support an award of mental anguish damages. AutoZone contends that
Reyes' evidence merely establishes that Reyes "developed a rash, was upset over losing
his job, was embarrassed about this, and that he drank to excess for a period of time." 
AutoZone asserts that these alleged emotional injuries are insufficient to justify an award
for mental anguish and that they are no more than "mere worry, anxiety, vexation,
embarrassment, or anger." See Saenz v. Fidelity Guar. Ins. Underwriters, 925 S.W.2d 608,
614 (Tex. 1996); Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). 

 In addressing mental anguish, we are guided by the Texas Supreme Court's decision
in Saenz. See Saenz, 925 S.W.2d at 614. In Saenz, the court reaffirmed Parkway, and
found that mental anguish damages could not be awarded without either "'direct evidence
of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial
disruption in the plaintiffs' daily routine, or other evidence of a high degree of mental pain
and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" 
Id. (citing Parkway, 901 S.W.2d at 444). Such evidence can take the form of the claimant's
own testimony. Parkway, 901 S.W.2d at 444. Additionally, there must be some evidence
to justify the amount actually awarded. Saenz, 925 S.W.2d at 614. While the Saenz court
acknowledged that juries should be given some measure of discretion in finding damages,
it made clear that a jury's discretion was not unlimited. See id. 

 Reyes' testimony fairly conveys the nature of his mental anguish. Reyes had worked
at AutoZone for fifteen years. Losing his job made him very "depressed, sad, angry,"
caused him to become more "reserved with the family," and caused him to begin drinking
excessively. He testified "when you lose your job when you are 62 years old, you kind of
think, '[w]ell, who is going to hire me again?' I was afraid of not finding a job locally. I was
afraid of the future. I thought I had let my family down." At the time of his termination he
was the only one working in his household. About two weeks after he was fired, he
developed a rash that was "like scabs all over my body." Reyes visited a doctor in
Matamoros, Mexico who told him that the rash was actually psoriasis and that "the main
cause was stress, very stressed, emotional stress." Reyes stated there is no cure for the
psoriasis. At the time of trial, Reyes still had a rash on his ankles and experienced flare-ups
from time to time. Reyes also testified that he was having trouble sleeping. Reyes began
working at O'Reilly's about a month and a half after he was discharged at AutoZone and
testified that finding a job at O'Reilly's helped him with his mental state and he "put [his] life
together . . . ." His position at O'Reilly's was as a salesperson or counterman, which is the
lowest rank, unlike his prior position at AutoZone which was managerial. He explained that
in applying at O'Reilly's he had to inform the supervisor that he was terminated from
AutoZone because he was falsely accused of sexual harassment. When asked if he was
embarrassed to tell the supervisor about the sexual harassment allegation, Reyes
responded, "I had to be honest with him." 

 Reyes' wife, Victoria, testified that after Reyes was terminated "he was taking [sic]
from the family." He started having trouble sleeping, he also started drinking and getting
sick. She would tell Reyes that he was drinking too much and he would explain that he
would drink so that he could sleep. Reyes visited a doctor in Matamoros after he developed
a rash on his body and the doctor asked if there had been a death in the family or
depression. Her relationship with Reyes suffered after he was discharged because he was
very upset and started drinking. Their youngest daughter lived with them at the time of
Reyes' discharge. Although Reyes was able to get a job pretty quickly, things did not get
back to normal because Reyes had to start all over at the age of 62. 

 We conclude the foregoing evidence is legally sufficient to find that Reyes suffered
mental anguish, and the jury's award is not unsupported by the evidence or against the
great weight and preponderance of the evidence. Moreover, we note that the jury may or
may not have awarded the full $211,840 for mental anguish, or may have awarded some
amount for the other types of compensatory damages included in the definition given to the
jury. It would be improper for us to speculate on how the jury divided its award among the
various types of compensatory damages. See Hernandez v. American Appliance Mfg.
Corp., 827 S.W.2d 383, 389 (Tex. App.-Corpus Christi 1992, writ denied). 

 To successfully challenge a multi-element damage award on appeal, the appellant
must address all of the elements and illustrate why the evidence is insufficient to support
the entire award. Golden Eagle Archery Inc. v. Jackson, 116 S.W.3d 757, 771 (Tex. 2003);
Norfolk Southern Rwy. Co. v. Bailey, 92 S.W.3d 577, 583-84 (Tex. App.-Austin 2002, no
pet.); Brookshire Bros., Inc. v. Lewis, 997 S.W.2d 908, 921-22 (Tex. App.-Beaumont 1999,
pet. denied); Price v. Short, 931 S.W.2d 677, 688 (Tex. App.-Dallas 1996, no writ).

 While AutoZone argues that there was no evidence of mental anguish, AutoZone
failed to address the evidence pertaining to the other types of compensatory damages. We
therefore cannot further analyze AutoZone's challenge regarding compensatory damages
because this would entail speculation about how the jury divided its award among the
various types of compensatory damages. See Thomas v. Oldham, 895 S.W.3d 352, 359-60
(Tex. 1995). 

V. Jury Question Number Two


 By its fifth issue, AutoZone contends the trial court improperly submitted jury question
number two to the jury. Jury question number two reads:

 What sum of money, if any, if paid now in cash, do you find from a
preponderance of the evidence would reasonably and adequately
compensate SALVADOR REYES for damages sustained from such conduct? 


 Consider the elements of damages listed below and none other. 
Consider each element separately. Do not include damages for one element
in any other element. Do not include interest on any amount of damages you
may find.


 Do not include in your answer any amount that you find SALVADOR
REYES could have earned by exercising reasonable diligence in seeking
other employment. 


 Answer separately, in dollars and cents for damages, if any.

 

 a. Back pay.

 

 "Back pay" is that amount of wages and employment benefits
that Salvador Reyes would have earned if he had not been
subjected to his employer's unlawful conduct less any wages,
unemployment compensation benefits or workers'
compensation benefits he received in the interim.


 "Employment benefits" include sick-leave pay, vacation pay,
profit-sharing benefits, stock options, pension fund benefits,
monetary losses incurred as a result of the loss of health, life,
dental or similar insurance coverage. 


 Answer:__________________

 

 b. Compensatory damages.

 

 "Compensatory damages" include future pecuniary losses,
emotional pain, suffering, inconvenience, mental anguish, loss
of enjoyment of life, and other nonpecuniary damages. Do not
include back pay or interest in calculating damages, if any.


 Answer:__________________ (4)


 As a sub-point in its fifth issue, AutoZone contends the trial court erred in submitting
the question of back pay to the jury because "only the judge, not the jury, may award
equitable relief such as back pay." In support of this argument, AutoZone cites to Texas
Labor Code section 21.258 and Caballero v. Central Power & Light Co., 858 S.W.2d 359,
361 (Tex. 1993). See Tex. Lab. Code Ann. § 21.258. AutoZone contends that, pursuant
to section 21.258, "the court may, among other things, order such additional equitable relief,
including back pay, as may be appropriate." (5) The relevant language in section 21.258
provides that the trial court may order additional equitable relief as may be appropriate, and
specifies that additional equitable relief may include "hiring or reinstating with or without
back pay." Id. § 21.258 (a)(2), (b)(1). While section 21.258 makes the award of additional
equitable relief in the form of "hiring or reinstating with or without back pay" a matter left up
to the trial court's discretion, it neither expressly or implicitly provides that back pay can only
be awarded by the trial court. (6)
 In an attempt to construe section 21.258 as providing that
back pay can only be awarded by the trial court, AutoZone cites to the supreme court's
decision in Caballero. See Caballero, 858 S.W.2d at 360-61. However, AutoZone's
reliance is misplaced. While Caballero does provide that equitable relief under the TCHRA
is to be determined by the trial court, it does not provide that back pay can only be awarded
by the trial court. See id. (holding that "when properly requested, jury trials are appropriate
for finding the ultimate issues of fact under the TCHRA, but not for fashioning appropriate
equitable relief."). Further, the corresponding jury charge, Texas Pattern Jury Charge
110.30, clearly contemplates that the issue of back pay be submitted to the jury. See
Comm. On Pattern Jury Charges, 1 State Bar of Texas, Texas Pattern Jury
Charges-Business, Consumer, Employment PJC 110.30 (2002) (providing charge for
question on back pay). In addition, we note that the issue of back pay has consistently
been submitted to juries. See Hoffmann-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438,
442 (Tex. 2004); U.S. Auto. Ass'n v. Brite, 161 S.W.3d 566, 575 (Tex. App.-San Antonio
2005, pet. filed); Ancira Enters. v. Fischer, 178 S.W.3d 82, 92 n.13 (Tex. App. -Austin
2005, no pet.); see also Claymex Brick & Tile, Inc. v. Garza, 2006 Tex. App. LEXIS 7417
(Tex. App.-Corpus Christi 2006, no pet.); W. Telemarketing Corp. Outbound v. McClure,
No. 2006 Tex. App. LEXIS 9404 (Tex. App.-El Paso 2006, no pet.). Accordingly, we find
AutoZone's contention without merit and conclude that a jury may award back pay. We
overrule AutoZone's fifth issue as it relates to whether the jury could award back pay. 

 As a second sub-point in its fifth issue, AutoZone claims a new trial is required
because valid and invalid damage elements were commingled in broad-form submission
in question 2a. See Harris County v. Smith, 96 S.W.3d 230, 234 (Tex. 2003); Tex. R. Civ.
P. 277. (7) 

 Specifically, AutoZone contends the trial court erred in submitting jury question 2a 
in broad-form because Reyes only proved losses as a result of his vacation pay and sick
leave pay but did not prove loss as a result of profit-sharing benefits, stock options, pension
fund benefits, or monetary losses incurred as a result of the loss of health, life, dental or
similar insurance coverage. Thus, AutoZone argues, these elements were improperly
submitted to the jury without any evidentiary support. 

 AutoZone lodged the following objection to question 2a:

We further would object to the question in that it asks about any submission
on employment benefits. That there is no evidence of employment benefits
that he lost such as vacation pay, profit sharing, stock options, pension,
insurance benefits, et cetera. There is no evidence of that or that would help
the jury calculate an amount, even if there was some evidence that he lost it. 
There is no evidence to help them determine any amount whatsoever. And
because it's all submitted together, we won't know how much the jury has
awarded for each and, therefore, it prevents me from being able to show
reversible error on that point. 


The trial court has a duty to submit only those questions, instructions, and definitions raised
by the pleadings and the evidence. See Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992);
see also Tex. R. Civ. P. 278. However, broad-form submission cannot be used to put
before the jury issues that have no basis in the law or the evidence. Harris County v. Smith,
96 S.W.3d 230, 236 (Tex. 2002); Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388-89
(Tex. 2000). (8) 

 Although AutoZone couches its objection and complaint on appeal as one
challenging the sufficiency of the evidence of different elements of back pay and asks this
Court to conduct an analysis in light of Harris County, AutoZone is in reality taking issue with
the definition of the types of back pay, specifically "employment benefits." AutoZone
contends the definition of "employment benefits" should have been modified to only include
those types of employments benefits which were supported by the evidence. 

 The trial court has considerable discretion in framing a jury charge and is given wide
latitude to determine the propriety of explanatory instructions and definitions. H.E. Butt
Grocery Co. v. Bilotto, 985 S.W.2d 22, 23 (Tex. 1998); Redwine v. AAA Life Ins. Co., 852
S.W.2d 10, 14 (Tex. App.-Dallas 1993, no writ). In submitting definitions to assist the jury,
the trial court has even more discretion as long as the definition is itself reasonably clear
in performing its function. Harris v. Harris, 765 S.W.2d 798, 801 (Tex. App.-Houston [14th
Dist.] 1989, writ denied); see Columbia Rio Grande Reg'l Healthcare, L.P. v. Hawley, 188
S.W.3d 838, 863 (Tex. App.-Corpus Christi 2006, pet. filed); Grenier v. Joe Camp, Inc., 900
S.W.2d 848, 850 (Tex. App.-Corpus Christi 1995, no writ). Accordingly, we review the
court's rulings under an abuse of discretion standard. Hiroms v. Scheffey, 76 S.W.3d 486,
487 (Tex. App.-Houston [14th Dist.] 2002, no pet.). A trial court abuses its discretion if it
acts without regard to any guiding rules or principles. Id.; Texas Dep't of Human Servs. v.
E.B., 802 S.W.2d 647, 649 (Tex. 1990). 

 The only function of an explanatory instruction or definition in the charge is to aid and
assist the jury in answering the issues submitted. Harris, 765 S.W.2d at 801. The definition
given by the trial court tracks the language of the recommended definition provided by
section 110.30 of the Texas Pattern Jury Charges. Definitions shall be given as necessary
to enable jurors to understand legal words or phrases used so that they may properly
answer the special issues and render a verdict in the case. Id. (citations omitted). The test
of the sufficiency of a definition is its reasonable clarity in performing this function. Id. 
(citations omitted). 

 To show reversible error, appellant must demonstrate harm from the definition
complained of. Id. While AutoZone speculates confusion as to whether the jury based its
verdict on a type of employment benefit allegedly not supported by evidence, there was no
showing of such confusion as demonstrated by the jury's answers. Id. Thus, the court did
not commit reversible error in submitting the definition as it did. We overrule AutoZone's
second sub-issue. 

 In a third sub-issue, AutoZone challenges jury question 2b's definition of
"compensatory damages" which lists "future pecuniary losses, emotional pain, suffering,
inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages"
as types of compensatory relief available. Again, AutoZone claims Reyes' evidence failed
to support submission of "future pecuniary losses, inconvenience, nonpecuniary damages,
or loss of enjoyment of life" as types of compensatory damages. The definition of
compensatory damages submitted in question 2b also tracks the language of pattern jury
charge 110.30. As we stated above, in submitting a definition, a trial court has "even more
discretion as long as the definition is itself reasonably clear in performing its function." See
Harris, 765 S.W.2d at 801; see also Hawley, 188 S.W.3d at 863; Grenier, 900 S.W.2d at
850. AutoZone again speculates confusion as to whether the jury based its verdict on a
type of compensatory damage allegedly not supported by evidence. However, there was
no showing of such confusion as demonstrated by the jury's answers. Id. Thus, the court
did not commit reversible error in submitting the definition as it did. We overrule AutoZone's
third sub-issue. AutoZone's fifth issue is thus overruled in its entirety. 

VI. Punitive Damages


 In its sixth issue, AutoZone contends the evidence is insufficient to support the jury's
award of punitive damages. Punitive damages may be awarded if the employer acted with
malice or reckless indifference to the state-protected rights of the employee. Tex. Lab.
Code Ann. § 21.2585. The standard for recovery of exemplary damages is by clear and
convincing evidence. Tex. Civ. Prac. & Rem. Code Ann. § 41.003 (Vernon Supp. 2006). 

 As evidence in support of the punitive damages award, Reyes argues that "AutoZone
upper management was well aware of the fact that federal law requires them not to
discriminate on the basis of age . . . . Yet, despite their acknowledgment of the applicability
of the state and federal age discrimination laws, AutoZone set about on a course of action
which constituted a pattern and practice of discriminating against older employees, by
treating them more harshly than younger employees." At most, Reyes' contention only
demonstrates that AutoZone discriminated against him. However, more than mere
discrimination is required to authorize punitive damages. Kolstad v. Am. Dental Assoc., 527
U.S.526, 534 (1999). After reviewing the record, we conclude there is no evidence of
malice or reckless indifference to justify the imposition of punitive damages. Accordingly,
we sustain AutoZone's sixth issue. (9)

 The judgment of the trial court is MODIFIED to reduce the award of back pay and to
delete the award of punitive damages. Otherwise the judgment is AFFIRMED AS
MODIFIED. 

 

 _______________________

 DORI CONTRERAS GARZA,

 Justice


Justice Federico Hinojosa not participating.


Memorandum Opinion delivered and 

filed this the 29th day of December, 2006.


1. When reviewing an issue under chapter 21, we may look to cases involving the state statute as well
as cases interpreting the analogous federal provisions in resolving these claims. Quantum Chem. Corp. v.
Toennies, 47 S.W.3d 473, 476 (Tex. 2001); M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22,
24 (Tex. 2000).
2. To make a prima facie case of age discrimination "a plaintiff must show that '(1) he was discharged;
(2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he
was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii)
otherwise discharged because of his age.'" Palasota v. Haggar Clothing Co., 342 F.3d 569, 576 (5th Cir.
2003) (quoting Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993)).
3. Once the case has been submitted to the jury, the adequacy of a party's showing at any particular
stage of the McDonnell Douglas analysis is unimportant. Travis v. Board of Regents of Univ. of Texas, 122
F.3d 259, 263 (5th Cir. 1997). "The question of whether a plaintiff made out a prima facie case of
discrimination has no place in a jury room." City of Austin Police Dep't v. Brown, 96 S.W.3d 588, 596-97 (Tex.
App.-Austin 2002, pet. dism'd) (citing Walther v. Lone Star Gas Co., 952 F.2d 119, 122 (5th Cir. 1992)). 
4. Jury question two tracks the language found in the corresponding Texas Pattern Jury Charge. See
Comm. On Pattern Jury Charges, 1 State Bar of Texas, Texas Pattern Jury Charges-Business,
Consumer, Employment PJC 110.30 (2002). 
5. We note that AutoZone's brief cites to section 21.2585 of the labor code which relates to
compensatory damages, instead of section 21.258 which is the section relating to equitable relief. 
6. We also note that in allowing the trial court to award equitable relief in the form of "hiring or reinstating
with or without back pay" the statute did not necessarily intend that the back pay itself be considered a form
of equitable relief. See Tex. Lab. Code Ann. § 21.258 (Vernon 2006). Moreover, equitable relief consists of
nonmonetary relief, such as an injunction or specific performance. See Black's Law Dictionary 1038 (7th
ed. 2000). Back pay is not equitable relief.

7. When a damages question mixes valid and invalid elements of damages in a single, broad-form
submission and the defendant adequately and correctly objected, harmful error occurs because the appellate
court cannot determine whether the jury based its verdict on an invalid or improperly submitted damage
element. See Harris County v. Smith, 96 S.W.3d 230, 234 (Tex. 2003); Tex. R. App. P. 61.1(b); see also
Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000) (finding harmful error where single liability
question mixed valid and invalid theories of recovery and defendant properly objected).
8. AutoZone does not contend there was insufficient evidence to support the submission of the issue
of back pay to the jury, as a matter of fact, it concedes that Reyes proved loss of wages, vacation pay, and
sick leave pay. As it relates to compensatory damages, AutoZone also does not challenge the submission
of the question on compensatory damages to the jury. In fact, AutoZone concedes Reyes presented some
evidence of pain and suffering. Thus, whether the trial court properly submitted the questions themselves is
not before us.
9. Given our disposition of this issue, we need not address AutoZone's two remaining issues which
relate to punitive damages. Tex. R. App. P. 47.1.